Walter D. SMALL, Plaintiff–Appellant,

v.

UNITED STATES, Defendant–Appellee.

No. 97–5074.

United States Court of Appeals,
Federal Circuit.

Oct. 14, 1998.

---

\* Editor Note: The Joint Statement of Facts and the Joint Appendix were not submitted for publication.

Guy J. Ferrante, King & Everhard, of Falls Church, VA, argued for plaintiff–appellant. Of counsel on brief was Kathleen St. John, of Marietta, GA. Of counsel was Kane St. John, of Marietta, GA.

Armando O. Bonilla, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendant–appellee. With him on brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Joseph A. Kijewski, Assistant Director. Of counsel on brief was Lt. Col. Steven J. Pecinovsky, Attorney, General Litigation Division, U.S. Air Force, of Arglington, VA.

Before PLAGER, CLEVENGER, and GAJARSA, Circuit Judges.

## DECISION

GAJARSA, Circuit Judge.

Walter D. Small appeals from the decision of the United States Court of Federal Claims, *Small v. United States*, 37 Fed. Cl. 149 (1997), holding that the use of a panel evaluation system in the officer promotion process did not contravene relevant statutory requirements (the "promotion board issue") and that the use of a prior pass-over as part of the information relied upon to determine the level of indorsement of an officer evaluation report (OER) presented a nonjusticiable issue (the "officer evaluation issue"). We hold that the panel evaluation system does not violate the relevant statutory requirements and therefore affirm the decision of the trial court with respect to the promotion board issue. We also affirm the trial court's holding with respect to the officer evaluation issue.

## BACKGROUND

### 1. The Promotion Board Issue

Mr. Small is a former major in the United States Air Force ("Air Force") who was twice passed over for promotion to the rank of lieutenant colonel and thereafter was involuntarily separated from the military upon completion of the twenty-year service period required for retirement pay eligibility. This is the so called "up or out" policy of the Air Force. Mr. Small argues that the 1986 and 1987 selection boards that considered his record for promotion were in violation of 10 U.S.C. §§ 616 & 617 because, among other things, these boards conducted their business in panels acting essentially independently, rather than in concert as a single deliberative entity.

Officers who are designated to serve on a selection board are divided into subordinate panels for their independent scoring of records and their recommendation of officers for promotion. Prior to actual scoring of records, board members are formally briefed as to the scoring procedures and then participate in a practice scoring exercise. The purpose of such exercise is to establish a uniform board standard of scoring. Following this training, the Air Force uses a reverse social security number method to distribute the records of the candidates to the various panels. Twenty individual records of the eligible candidates for promotion are sequentially assigned to each of the panels until all the records are distributed.

Individual panel members score each candidate's records separately. As soon as a panel has reviewed and scored a block of twenty candidates' records, the scores given to each candidate by the individual panel members are summed and the total score given to each candidate is then prioritized in its relative order of merit among all the candidates' scores by that panel. Each panel is assigned a proportionate share of the entire board's promotion quota. After a panel has completed scoring all of its candidates and has sequenced the records according to their relative order of merit, the panel's proportionate share of the promotion quota is then applied to the scored candidates, beginning with the highest merit score and moving down through the numerical rankings until the promotion quota is exhausted.

When a panel's proportionate quota is applied to that panel's relative order of merit and the numerical scoring level at which the promotion cut-off point occurs contains more candidates than can be accommodated within the panel's promotion quota, the candidates with the same scores are referred to as candidates in the "gray" zone. When gray zone candidates appear, the panel is required to rescore these records in order to eliminate the duplicative scores. For example, if a panel's promotion quota is 50 candidates and 45 candidates fall into score categories above the gray zone and ten candidates are in the panel's gray zone, the panel must rescore the ten gray zone candidates in order to determine the five best among the ten.

Prior to the convening of each promotion board, the eligibility criteria, method of selection, promotion quota, and statistical data are submitted to and approved by either the Secretary of the Air Force or the Assistant Secretary of the Air Force for Manpower and Reserve Affairs. At the conclusion of each promotion board, the board formally submits a written report, pursuant to 10 U.S.C. § 617, to the Secretary of the Air Force apprising him or her of the results of the promotion board's session (the "Board Report"). Prior to signing the Board Report, each panel member must decide whether to indorse the slate of candidates selected by the individual panels. Each member must certify that the board has (1) carefully considered the record of each promotion candidate and (2) recommended for promotion only those candidates found to be the "best qualified" for promotion among the candidates considered. If a majority of the board members adopts and certifies to the foregoing, then the Board Report is finalized and presented to the Secretary of the Air Force.

Mr. Small argued below that the use of panels to make decisions for the entire selection board violated the relevant statutory provisions, which require that (1) the board make findings and recommendations regarding the candidates for promotion and (2) each member of the board certify that the officers

recommended for promotion are the best qualified in the opinion of a majority of the board members. *See* 10 U.S.C. §§ 616 & 617. The Court of Federal Claims held that, because nothing in the statute required personal knowledge for a majority determination by the board, the panel system complied with the statutory requirements.

## 2. The Officer Evaluation Issue

Air Force Regulation 36–10 (Nov.1982) ("AFR 36–10") is the administrative guideline that sets out the requirements governing the preparation and processing of OERs. This regulation contemplates an officer evaluation system keyed to the chain of command. Each officer's performance is evaluated by a "rater" (the officer's immediate supervisor), by an additional rater (the rater's rater) and by an indorser (the additional rater's rater). Commanders are given some latitude in structuring the reporting chains for their respective commands. Although raters must be identified and assigned before the closeout date of a ratee's report, this requirement of pre-identification need not be applied to the additional rater or the indorser. The regulation vests commanders with discretion in determining the level of indorsement to be applied to a given OER, which in turn provides "a further opportunity to achieve differentiation [among ratees] and recognizes that both level of indorsement and indorser grade have an impact on those who use the OER." AFR 36–10, para. 2–23(b).

Mr. Small contests the procedure used by the Space Division of Air Force Systems Command in order to identify those OERs that merited a higher level of indorsement. As demonstrated in the record before us, that procedure involved the rater's preparation of a separate form, an OER Indorsement Request Form, that accompanied the OER and that presented a brief summary of an officer's military record including prior pass-overs. On the reverse side of this same form, the rater was required to indicate a suggested level of indorsement and to provide a justification supporting the suggested indorsement and text. Upon completion, this form, together with its related OER, was then forwarded to the base personnel office

for review to assure compliance with prescribed format and completeness of data entries.

In this case, Mr. Small's rater prepared an OER and gave the Appellant the highest possible score in each of the listed performance factors. On the accompanying OER Indorsement Request Form, the rater suggested that the chief commander of the Space Division, who was a three star general, indorse the OER. The OER and the indorsement form were then forwarded to the consolidated base personnel office, which made the following observations:

> Maj. Small is a long shot for 05 [promotion to lieutenant colonel] whether with AFSC/CC or SD/CC [whether indorsed by Air Force Systems Command, Chief Commander or Space Division, Chief Commander]—1x passover probably for reasons listed in [attached] memo—not on list of officers identified as still promotable after last board by [Headquarters, Air Force Systems Command, Military Personnel Plans Branch]—therefore AFSC/CC [indorsement] would be doubtful—no point in using precious SD/CC [indorsement] for someone whom it would not help. . . .

*Small,* 37 Fed. Cl. at 151–52.

After the command personnel at the Space Division recommended that Mr. Small's OER receive a vice commander indorsement rather than a chief commander indorsement, this recommendation was made known to the rater, who agreed with the recommended stepdown in indorsement level. The rater changed his recommended indorser to a vice commander and noted that "Major Small is a one time passover to Lt. Col. He did not have his [Senior Service School] complete last yr. He has now done that. It would take a AFSC/CC to push him over the top and I am not willing to go that high. A SD/CC [Space Division chief commander] would be nice but a CV [vice commander] will be good." *Id.* at 152.

Mr. Small argued below that his commander's reliance upon his prior pass-over in determining the level of indorsement violated several sections of AFR 36–10, which prohibited using promotability potential and prior

pass-overs as factors in evaluations. The government argued below that these prohibitions applied only to ratings and not to determinations of indorsement levels. The Court of Federal Claims held that this issue was nonjusticiable because there were no statutory standards by which it could test the legality of the Air Force's conduct.

## DISCUSSION

■ This case comes to us from the parties' cross-motions for summary judgment. The trial court granted the government's motion for summary judgment and denied Mr. Small's motion. This Court reviews *de novo* the trial court's grant of summary judgment. *See M & J Coal Co. v. United States*, 47 F.3d 1148, 1152 (Fed.Cir. 1995). We review the two legal questions raised in this appeal *de novo*. *See Harbert/Lummus Agrifuels Projects v. United States*, 142 F.3d 1429, 1432 (Fed.Cir.1998).

### 1. The Promotion Board Issue

■ Mr. Small's principal argument is that a selection board is statutorily obliged to conduct its business as a collective body and not through subordinate panels. This argument is based primarily on the wording of 10 U.S.C. §§ 616(c) and 617(a). Section 616(c) provides as follows:

(c) A selection board convened under section 611(a) of this title may not recommend an officer for promotion unless -

(1) the officer receives the *recommendation of a majority* of the members of the board; and

(2) a *majority* of the members of the board *finds* that the officer is fully qualified for promotion.

(Emphasis added). The other provision, § 617(a), reads as follows:

(a) Each selection board convened under section 611(a) of this title shall submit to the Secretary of the military department concerned a written report, signed by each member of the board, containing a list of the names of the officers it recommends for promotion and certifying (1) that the board has carefully considered the record of each officer whose name was furnished

to it under section 615 of this title, and (2) that, *in the opinion of a majority of the members of the board,* the officers recommended for promotion by the board are best qualified for promotion to meet the needs of the armed force concerned ... among those officers whose names were furnished to the selection board. (Emphasis added).

Mr. Small interprets § 616(c) as requiring that at least a majority of the members of the selection board review each candidate's record and agree on each candidate being recommended. Mr. Small contends that the current process is no more than an empty ritual, with each panel merely adopting the results reported by other panels and submitting the combined results as majority action rather than actually making a majority finding and recommendation. Mr. Small further argues that § 617(a) is violated when (a) none of the members know whom they are "recommending" for promotion and (b) board members affirm their faith in the selection board process rather than certifying the existence of a majority consensus about the officers who are best qualified for promotion.

■ Our role in analyzing Mr. Small's arguments has been clearly delineated by the Supreme Court. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). In *Chevron,* the Court explained:

When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress had not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is

based on a permissible construction of the statute.

*Id.* at 842–43, 104 S.Ct. 2778.[1] With regard to the statutory provisions cited by Mr. Small, Congress has not spoken to the issue of whether the selection board must conduct itself as a collective body. The statutory provisions do not contain any specific methodology that the selection board must use in carrying out its deliberative process. In addition, the parties direct us to nothing in the legislative history that would reveal Congress' intent with regard to these issues and we have found no guidance in our review of the legislative history.

Given the facts before us, we also hold that the Air Force's interpretation of the statute is a permissible one. The statute does not require that a majority determination be based on a knowing review and conscientious consideration of each officer's record. Nothing in the plain language of the statute requires first-hand knowledge on the part of the deliberators of an officer's record. All that is required is a numerical showing that more than half of the board members approved or disapproved of the matter before them. The Air Force, like the other branches of the military, is confronted with establishing a selection process pursuant to statute that is fair in view of the extensive number of individual officers who may be eligible for consideration. A review of a selected number of individuals by sub-panels who use common and identifiable criteria is an efficacious and equitable means to establish the final rankings that are in fact approved by a majority of the members of the board. This court is not in a position under *Chevron* to impose its statutory construction for that of the Air Force when it finds that the statutory construction provided by the agency is a permissible one. In sum, we agree with the trial court that "[t]here is ... no reason why the business of coming to a 'majority' consensus cannot be accomplished through collective approval of the findings and recommendations of a sub-group—i.e., a selection panel." *Small,* 37 Fed. Cl. at 156.

In addition, using the signing of the Board Report as a means for the members to both express their approval of the recommended candidates and make the required certification is permissible under the statutory scheme as well.

Mr. Small eloquently presents a variety of other arguments in support of his interpretation of these statutory provisions. These arguments range from issues regarding the policy of centralized review in the promotion process to basic principles of governing society as explained by Plato. We have considered these arguments and find them unpersuasive as well.

### 2. The Officer Evaluation Issue

■ Mr. Small contends that the use of his prior pass-over as the central factor in determining the recommended level of indorser violates AFR 36–10. This regulation provides at several points that prior pass-overs and the candidate's promotability are not to be considered by the evaluators in the rating chain. For example, AFR 36–10 para. 1–7 states that "selection board eligibility status, such as previous nonselection, ... should not form the basis for a decision to make a recommendation or to assign a particular potential rating." *See also* AFR 36–10, para. 3–14(f) & (j). The government responds to these arguments by stating that there is a difference between the contents of "ratings" and "evaluations" in an OER and the process by which a particular OER indorsement level is selected. The government contends that AFR 36–10 only limits the contents of the ratings and evaluations in an OER, but does not limit the process by which the level of indorsement is determined. In furtherance of this argument, the government points to AFR 36–10 para. 2–23, which explicitly grants the rater discretion in determining the level of indorsement. This provision states that "commanders [are given] some latitude in determining exactly how the rating chain will be structured within their units. This flexibility provides a further op-

---

1. The Secretary of the Air Force has substantive rulemaking power with respect to the selection boards at issue in this case and thus *Chevron* deference applies. *See Merck & Co., Inc. v. Kes-* *sler,* 80 F.3d 1543, 1549, 38 USPQ2d 1347, 1351 (Fed.Cir.1996) (no *Chevron* deference when agency did not have rulemaking authority in relevant area).

portunity to achieve differentiation .... *indorsement chains may be established by supplement to this regulation or by common usage in the unit.*" AFR 36–10, para. 2–23 (emphasis added). We think it is clear that the regulation at issue affords a substantial measure of discretion to the command in structuring the rating chain. Because the regulation on its face grants discretion to the command to select a rating chain, Mr. Small must show that the command's discretion was abused in his case. Given the Air Force's construction of the regulation, with which we concur, we discern no abuse of discretion in this regard.

■ Furthermore, in addition to asking the trial court to correct his military record, which Mr. Small asserts was compiled in violation of the regulation, he asked the trial court to review the merits of his nonselection. The trial court was correct in holding that, in this regard, Mr. Small raises an issue that is nonjusticiable. As we have held previously, the possibility of an error in a military service member's record is not enough to vest the court with power to act. *See Murphy v. United States,* 993 F.2d 871, 873 (Fed.Cir. 1993); *see also Sargisson v. United States,* 913 F.2d 918 (Fed.Cir.1990). In *Murphy,* the Court of Federal Claims held that an Air Force Reserve Officer was unlawfully released from active duty based on incorrect military records and ordered reinstatement,

back pay, and correction of military records. *Murphy,* 993 F.2d at 871. We reversed, holding that there were no "tests or standards [a court] could apply to determine whether the officer would have been released even on the court's version of the [corrected] record" and therefore the issue was nonjusticiable. *Id.* at 873. Similarly in this case, there are no tests or standards we can apply to determine whether Mr. Small would have been promoted even if his record had contained an indorsement by a chief commander. We therefore find this issue nonjusticiable and affirm the decision of the trial court with respect to this issue as well.

## CONCLUSION

We affirm the decision of the trial court with respect to both the promotion board issue and the officer evaluation issue.

*AFFIRMED.*

## COSTS

Each party to bear its own costs.