**Joseph C. CAMPA, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant,**

No. 96–279C.

United States Court of Federal Claims.

Aug. 29, 2001.

Order was originally filed unpublished on Aug. 17, 2001 *.

Guy J. Ferrante, Springfield, Virginia, attorney for Plaintiffs.

Lee J. Freedman, Washington, DC, with whom was Acting Assistant Attorney General Stuart E. Schiffer, for Defendant. Lt. Col. Bruce Lennard, U.S. Air Force Litigation, Military Personnel Branch, of counsel.

## OPINION

MEROW, Senior Judge.

This military pay case concerns several former United States Air Force officers that were involuntarily separated from active duty after they were considered but not selected for promotion. The matter is before the Court on defendant's motion to dismiss and plaintiffs' opposition thereto. Plaintiffs contend that the Air Force promotion process violates several applicable statutes and regulations and that therefore their involuntary separation was invalid. Defendant argues that plaintiffs' claims must fail under authority that is binding on this Court. For the reasons stated below, defendant's motion to dismiss is granted.

## BACKGROUND

The following facts, which are undisputed, are taken primarily from plaintiffs' First Amended Complaint. Plaintiffs are 368 former Air Force officers seeking back pay, correction of military records, and other relief for their alleged wrongful separation. Plaintiff Joseph C. Campa ("Campa"), typical of all of the plaintiffs, was considered but not selected for promotion to the grade of lieutenant colonel by the 1991 and 1992 Air Force promotion boards. As a result of this non-selection, Campa was involuntarily separated from the Air Force pursuant to 10 U.S.C § 632.

### A. The Air Force Promotion Process

Air Force officers seeking promotion are evaluated against all other officers in the same competitive category. The Air Force defines the "Line" officer competitive category as all officers who are not in the health care fields or members of the Judge Advocate General or Chaplain Corps. Officers seeking promotion in the Line competitive category are reviewed by a selection board consisting of twenty-five or more members. This board is divided into panels consisting of five members each. The records of the candidates are randomly distributed among the panels, and the board's promotion quota is divided among the panels according to the number of records each panel reviews.

Prior to reviewing candidates' records, board members participate in a trial scoring exercise involving ten sample records. This trial exercise, typically completed in one afternoon, is designed to familiarize board members with the records that they will be scoring. Members apply the "whole person standard" when scoring a record, which allows a member to consider any aspect of an

---

* Defendant's Request for Publication was filed on  August 27, 2001.

officer's record and gives discretion to the member to decide how to weigh each aspect.

A member may award one of nine possible scores to a record: 10.0 Absolutely Superior; 9.5 Outstanding Record; 9.0 Few could be better; 8.5 Strong record; 8.0 Slightly above average; 7.5 Average; 7.0 Slightly below average; 6.5 Well below average; 6.0 Lowest in potential. Unless there is a deviation of at least two points in the scores awarded to a record by two or more panel members, panel members do not know the score assigned by any other member and there is no discussion between members.

Following the scoring of candidates' records, the Board Secretarial staff enters the scores into a computer database. The computer applies the panel's proportionate promotion quota to the aggregate scores, starting with the highest score and proceeding to the next highest score, and so on. When the quota is exhausted at a score at which there are more candidates than can be accommodated by the panel's promotion quota, the computer designates a group of officers with scores around the cut-off line for re-scoring. This group is designated the "gray zone." Candidates in the "gray zone" are re-scored by the panel until the computer indicates that a cut-off line can be evenly drawn or until the final two records are resolved by the panel.

The Board Secretariat staff then reviews the computer data and reveals to the panel members the identities of the panel's lowest scoring "select" candidate (*i.e.* the officer with the lowest aggregate score who was within the promotion quota) and highest scoring "non-select" candidate (*i.e.* the officer with the highest aggregate score who was not within the promotion quota). The panel members vote on whether the highest scoring "non-select" candidate is "fully qualified" for promotion. If so, then the Air Force finds that all candidates with higher scores (all of the "select" candidates) are also "fully qualified" for promotion. The identities of these "select" officers are not revealed to panel members at any time. Board members then sign a blank paper with signature blocks for each board member. After the paper is signed, the Board Secretarial staff attaches a report with certification language and a list of names to the signature page. Each person on this list is deemed to be "recommended" and "fully qualified" for promotion. This document is forwarded to the Secretary of the Air Force as the board's report. Board members are not permitted to see the report or the list of candidates until after the Secretary approves it for public release.

## B. Plaintiffs' Complaint

In their First Amended Complaint, filed October 14, 1999, plaintiffs allege that the Air Force promotion system described above violates governing statutes and regulations and that therefore plaintiffs' involuntary separation was invalid. Plaintiffs' primary allegation is that the promotion process fails to meet the minimum procedural requirements of 10 U.S.C. §§ 616(c) and 617(a). Section 616(c) states that a selection board "may not recommend an officer for promotion unless-(1) the officer receives the recommendation of a majority of the members of the board; and (2) a majority of the members of the board finds that the officer is fully qualified for promotion." Plaintiffs argue that under the Air Force system, board members do not make any "recommendations" and do not find that any officer is "fully qualified."

Section 617(a) requires the selection board to submit a signed, written report certifying that, "in the opinion of a majority of the members of the board, the officers recommended for promotion by the board are best qualified to meet the needs of the armed force concerned." Plaintiffs contend that Air Force selection boards make no certification and no finding that any officer is "best qualified."

Plaintiffs also allege that the Air Force promotion process violates 10 U.S.C. §§ 611(a), 612(a)(1), 612(a)(3), 613, 615(a)(3), 618(f), and 621, as well as Department of Defense Directive (DoDD) 5025.1 (1994), DoDD 1320.9 (1981) D.1, DoDD 1320.12 (1992) E.2 and F.2, DoDD 1320.12 (1987) G.3 and Air Force Regulation (AFR) 36–89 (1992) ¶¶ 5(c), 7(a), 14(b)(2) and 14(h)(3).

## DISCUSSION

### A. Standard of Review

Defendant initially filed a motion to dismiss pursuant to Rule 12(b)(4) of the Rules of the United States Court of Federal Claims ("RCFC"). This motion will be treated as a RCFC 56 motion for summary judgment because matters outside the pleadings are presented to the Court and are not excluded. *See Apache Tribe of Mescalero Reservation v. United States*, 43 Fed.Cl. 155, 170 (1999). Summary judgment is appropriate when there are no genuine disputes over material facts and the moving party is entitled to prevail as a matter of law. RCFC 56(c); *See Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed.Cir.1987). A genuine dispute concerning a material fact exists when the evidence presented would permit a reasonable jury to find in favor of the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, in order to prevail upon a motion for summary judgment, a party must demonstrate that no facts exist which would change the outcome of the litigation under the substantive law governing the suit. *See id.* at 248, 106 S.Ct. 2505.

### B. Merits

The central dispute in this case is whether *Small v. United States*, 158 F.3d 576 (Fed. Cir.1998), *amended by* 180 F.3d 1343 (Fed. Cir.1999), *cert. denied*, 528 U.S. 821, 120 S.Ct. 64, 145 L.Ed.2d 55 (1999), *Fluellen v. United States*, 225 F.3d 1298 (Fed.Cir.2000) and *Roane v. United States*, 231 F.3d 1348 (Fed.Cir.2000), *amended on reh'g*, 237 F.3d 1352 (Fed.Cir.2001) control and dispose of plaintiffs' claims because they expressly approve the Air Force promotion process. Plaintiffs contend that those cases are factually distinguishable and inapplicable here, while defendant argues that this case fits squarely under their controlling precedent. Plaintiffs have also claimed that the process violates several statutes and regulations that have not been previously raised.

### 1. Applicability of the Federal Circuit Decisions

In *Small*, a former Air Force officer challenged the validity of the 1986 and 1987 lieutenant colonel selection boards. The Federal Circuit held that the Air Force promotion system "does not violate the relevant statutory requirements." *Small*, 158 F.3d at 577. Specifically, the Court held that the Air Force's panel system did result in the majority findings, recommendations and certification required by 10 U.S.C. §§ 616(c) and 617(a). *Id.* at 581. *Fluellen* presented a similar challenge by a former reserve captain. The Federal Circuit stated that *Small* disposed of Fluellen's claim that the panel system violated 10 U.S.C. §§ 616(c) and 617(a). *See Fluellen*, 225 F.3d at 1301. The Court further held that the Air Force promotion system is consistent with DoDD 1320.9 D.1 and 10 U.S.C. § 612(a)(3). *See id.* at 1301–02. In *Roane*, the Federal Circuit held that *Small* and *Fluellen* disposed of plaintiff's claim that the Air Force promotion system violated 10 U.S.C. §§ 616(c) and 617(a) and DoDD 1320.9. 237 F.3d at 1353.

Faced with this adverse authority, plaintiffs vigorously argue that *Small* is factually distinguishable from the present matter. In essence, plaintiffs' argument is that factual errors in *Small* render it inapplicable here. Plaintiffs concede that "the procedures *actually* followed by Major Small's promotion boards are substantially the same as the procedures *actually* followed by theirs." Plaintiffs' Surreply at 1–2 (emphasis in original). However, plaintiffs contend that many of the facts concerning the Air Force promotion process as found by the Court in *Small* are substantially false or incomplete. Because of this inaccuracy, plaintiffs maintain, the procedures approved by the *Small* Court (as well as the *Fleuellen* and *Roane* Courts) are not the actual procedures used by the Air Force. According to plaintiffs, whether the actual Air Force promotion process complies with relevant statutory and regulatory requirements is a question that has not been decided.

In support of this argument, plaintiffs cite 28 undisputed facts that they allege "were not the subject of findings in *Small* or *Fluellen* or are contrary to findings that were made in those cases." Plaintiffs' Opposition

to Defendant's Motion to Dismiss at 11. Although plaintiffs have pled some factual differences, they have not demonstrated that the true Air Force promotion process is materially different from the one described in *Small* and *Fluellen*. The majority of these facts are simply intricate details of the process that the *Small* and *Fluellen* Courts chose not to describe. They do not contradict the facts as presented there. Several others are actually plaintiffs' legal arguments mis-characterized as distinguishing facts. Plaintiffs do offer a few factual distinctions. For example, in *Small* the Court found that the training exercise prior to the scoring of records was designed to establish a uniform scoring standard. 158 F.3d at 578. Plaintiffs allege here that the training exercise is not intended to and does not establish a uniform scoring standard. Plaintiffs further allege that the *Fluellen* Court incorrectly found that the panel determines the list of candidates to recommend for promotion when it is really the board staff using a computer that applies the promotion quota to the list of aggregate scores. These differences are slight and are insufficient to distinguish this case from *Small* and *Fluellen*. Accordingly, plaintiffs' claims that the Air Force promotion process violates 10 U.S.C. §§ 616(c), 617(a) and 612(a)(3) and DoDD 1320.9 fail as a matter of law.

## 2. Plaintiffs' Remaining Claims

Although the bulk of their argument is directed towards the claims addressed above, plaintiffs also contend that several other statutory and regulatory provisions are violated. After careful review, it is concluded that the Air Force promotion process satisfies all of these provisions. The statutes that plaintiffs claim are violated simply set up the basic framework that governs the promotion system. 10 U.S.C. §§ 611(a) and 612(a)(1) specify the nature and composition of the selection boards. Section 613 requires board members to swear to perform their duties without prejudice. Plaintiffs have not demonstrated that the Air Force system violates these statutes. Section 615(a)(3) requires that information provided to the selection board shall be made available to all board members. Although plaintiffs contend that

board members do not actually review each piece of information presented to the board, they have not established that members were denied access to any information they wished to review. 10 U.S.C. 618(f) prohibits disclosure of board proceedings to any person not a member of the board. Plaintiffs have not argued that board proceedings were improperly disclosed. Finally, 10 U.S.C. § 621 requires that officers in the same competitive category must compete for promotion among themselves. Plaintiffs have not established that officers in different competitive categories competed for promotion.

Plaintiffs devote little argument to their claims of regulatory violations. They have not shown any violation of DoDD 5025.1, which concerns the DoDD Directives System. DoDD 1320.12 (1992) E.2(h) repeats the requirement in DoDD 1320.9 (1981) D.1 that separate selection boards shall be convened for each competitive category. *Fluellen* found that the Air Force promotion system was consistent with DoDD 1320.9, and this reasoning applies to DoDD 1320.12 E.2(h) as well. 225 F.3d at 1301. DoDD 1320.12 (1987) G.3(c), DoDD 1320.12 (1992) E.2(n)(1), and AFR 36–89 (1992) ¶ 5(c) prohibit a person from directing the selection of any candidate or interfering with the independence of the board members. Plaintiffs have not demonstrated a violation of these provisions. DoDD 1320.12 (1992) F.2(a)(2) and AFR 36–89 (1992) ¶ 14(b)(2) require that board members base their recommendations on a candidate's official military record. Plaintiffs have not alleged that material other than official military records was consulted by the board. AFR 36–89 (1992) ¶ 14(h)(3) requires board members to "remove from the tentative recommended list any officer the board determines is not fully qualified for promotion." Plaintiffs have not alleged that any officer remained on the tentative recommended list in violation of this regulation.

DoDD 1320.12 (1992) E.2 and AFR 36–89 (1992) ¶ 5(c) require the Air Force to issue written procedures to govern the selection boards and to have those procedures approved by the Secretary of Defense and the Secretary of the Air Force. Plaintiffs allege that the Air Force has failed to issue the

necessary documents and to obtain the requisite approval. Neither party has addressed this claim with specificity. Considering that the promotion process satisfies the relevant statutory requirements, plaintiffs have not demonstrated that this failure would entitle them to any relief.

Finally, plaintiffs allege that the promotion process is rife with, or at least susceptible to, misconduct by board members and board staff. For example, plaintiffs contend that board staff members have the ability to secretly alter the select or non-select status of candidates after the board has adjourned. Plaintiffs' vague and unsubstantiated allegations of misconduct are insufficient to override the "presumption that public officers perform their duties correctly, fairly, in good faith, and in accordance with the law and governing regulations." *Lachance v. White,* 174 F.3d 1378, 1381 (Fed.Cir.1999).

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED.** The Clerk is directed to enter judgment for the Defendant. No costs to be assessed.