**Phillip M. KING Plaintiff,**

v.

**THE UNITED STATES, Defendant.**

No. 96–439C.

United States Court of Federal Claims.

Nov. 1, 2001.

Guy J. Ferrante, Esq., Springfield, Virginia, argued for plaintiff.

J. Reid Prouty, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, argued for defendant. With him on the briefs were David M. Cohen, Director, Bryant G. Snee, Assistant Director, and Major Jennifer McDermott, Trial Attorney, United States Air Force, General Litigation Division.

## OPINION

BRUGGINK, Senior Judge.

Plaintiff seeks to recover military pay, allowances, and other benefits, as well as correction of his military record to delete any and all references to his promotion non-selections and 1992 retirement, and to reflect continuous active duty service, and thereby permit his reinstatement to active duty. The matter was suspended in 1996 pending final resolution of two related cases: *Small v. United States*, 36 Fed.Cl. 43 (1996), and *Roane v. United States*, 36 Fed.Cl. 168 (1996). The suspension ended with the decision of the United States Court of Appeals for the Federal Circuit in *Small v. United States*, 158 F.3d 576 (Fed.Cir.1998), *amended by* 180 F.3d 1343 (Fed.Cir.1999). Pending are Defendant's Motion to Dismiss or, in the Alternative, For Judgment Upon the Administrative Record, and Plaintiff's Cross–Motion for Summary Judgment. Oral argument was held on October 23, 2001. For the reasons set out below, defendant's motion for summary judgment is granted and plaintiff's motion is denied.

## BACKGROUND

Plaintiff, Major Phillip M. King, is a retired major in the United States Air Force. In 1988, plaintiff was married to another active duty Air Force officer, Captain Maria King. Both were serving at Minot Air Force Base ("AFB") in North Dakota, where plaintiff was apparently performing superbly as the Chief of Airfield Management. Strategic Air Command ("SAC") wanted to assign Mrs. King, a personnel officer, to its headquarters at Ofutt AFB in Nebraska. She agreed to the assignment on the condition that there would be a position for plaintiff at Ofutt, as well. While processing Mrs. King's transfer, SAC indicated that it would undertake to find plaintiff a "good job."

Plaintiff was interested in accompanying his wife to Ofutt; but he was also nearing promotion to the grade of lieutenant colonel and was aware that reassignment at such a sensitive time could be prejudicial to his promotion competitiveness if it was to a position of lesser responsibility. Accordingly, plaintiff discussed the matter with his commander at Minot, Colonel John Wiley. They agreed that a reassignment to Ofutt, in conjunction with his wife's reassignment, was only wise if it was to a position of equal or greater responsibility.

In 1988, the Air Force, with Colonel Wiley's approval, offered plaintiff an assignment as the Chief of Airfield Management at the 55th Strategic Reconnaissance Wing at Ofutt. However, 55th Wing officials had previously advised SAC that no suitable position was available for him and were surprised to learn that he was still being assigned there. They also called plaintiff prior to his transfer and advised him that the current Chief of Airfield Management at Ofutt was not leaving or retiring. When plaintiff reported to Ofutt, he discovered that the Chief of Airfield Management position was indeed already filled; subsequently, his commanding officer there assigned him to a position as a Plans Officer.

As a Plans Officer at Ofutt, plaintiff later received a "Promote" recommendation from his commander, rather than what he had

hoped for, "Definitely Promote." Plaintiff was not promoted. However, 100% of line officers with a "Definitely Promote" recommendation at the 1989 Air Force promotion review board were. On September 1, 1992, plaintiff was mandatorily retired from the military after serving on active duty for twenty years and failing, in 1989 and 1990, to be selected for promotion to lieutenant colonel.

On August 10, 1990, plaintiff sought administrative relief from the Air Force Board for Correction of Military Records ("AFBCMR"), alleging that the Air Force had improperly assigned him in 1988 to a non-competitive position that did not exist, thereby unfairly prejudicing his chances for promotion. The AFBCMR denied plaintiff's request on May 23, 1991. It also denied plaintiff's subsequent requests for reconsideration on April 20, 1993, and March 16, 1994. On July 23, 1996, plaintiff commenced this action.

## DISCUSSION

Plaintiff raises two independent theories in support of his claim. First, he argues that the promotion boards which declined to recommend him for promotion to lieutenant colonel were illegally conducted. Second, plaintiff argues that defendant illegally reassigned him to a position—Plans Officer—that prejudiced his promotion competitiveness.

### I. THE PROMOTION BOARD

The statutes governing military promotion boards require three things: (1) promotion recommendations by a "majority" of the members of the promotion board; (2) findings by a "majority of the members of the board" that each recommended officer is fully qualified for promotion; and (3) a unanimous certification that the board has recommended the best qualified officers out of all those considered for promotion. 10 U.S.C. §§ 616(c) and 617(a) (1994). Additionally, Department of Defense Directive ("DoDD") 1320.9 ¶ D.1.a (1981) requires *"Centralized*

*Selection.* To ensure fairness in the promotion selection process and a balanced appraisal of the needs of the Military Service concerned, a single board shall be convened to consider all eligible officers in the same grade and competitive category for promotion ...." Plaintiff alleges that the 1989 and 1990 promotion boards, which did not select him for promotion to lieutenant colonel, failed to meet these minimum requirements.

Plaintiff describes the Air Force's procedure for distributing officer selection records for evaluation for promotion during 1989 and 1990 as follows.[1] Each year, the selection board was broken into subordinate five-member panels. The records of officers under consideration for promotion were randomly distributed among those panels. Within each panel, members independently evaluated all the candidates assigned to that panel, secretly giving a numerical score to each. The administrative support staff then added each candidate's five scores and arranged the totals in a hierarchical ranking called the Order of Merit.

During this process, the Board President reviewed the scoring, assisted by a computer-generated model, known as the Projected Order of Merit. This model predicted, based on certain data common to each candidate's file, how each would fare in the rankings process in terms of likelihood of promotion. If any record received a score with which the Board President was not satisfied, he or she would return that record for rescoring, by the same or a different panel, and then choose which score to apply. Once each panel's Order of Merit was finalized, the administrative support staff identified officers who would be recommended for promotion by counting down from the top of each ranking until the number of officers needed for promotion was exhausted. The members of each panel were asked to determine whether one of the candidates was "fully qualified" for promotion. If so, it was assumed that all higher-scored records on

---

1. Plaintiff acknowledges that the selection boards that considered him for promotion were, with some "notable exceptions," conducted as described in *Small, Roane v. United States*, 237 F.3d 1352 (Fed.Cir.2001), and *Fluellen v. United States*, 44 Fed.Cl. 97 (1999), *aff'd*, 225 F.3d 1298 (Fed.Cir.2000).

the Order of Merit were also rated as fully qualified. At the end of the proceeding, each member signed a board report to which an alphabetized list of all the panels' selectees was later appended.

Plaintiff asserts that this process contravened the following statutory requirements. 10 U.S.C. § 611:

(a) Under regulations prescribed by the Secretary of Defense, the Secretary of the military department concerned, whenever the needs of the service require, shall convene selection boards to recommend for promotion to the next higher permanent grade, under subchapter II of this chapter, officers on the active-duty list in each permanent grade from first lieutenant through brigadier general in the Army, Air Force, or Marine Corps and from lieutenant (junior grade) through rear admiral (lower half) in the Navy.

10 U.S.C. § 616:

(c) A selection board convened under section 611(a) of this title may not recommend an officer for promotion unless—

(1) the officer receives the recommendation of *a majority of the members of the board;* and

(2) *a majority of the members of the board* finds that the officer is *fully qualified* for promotion.

(Emphasis added).

10 U.S.C. § 617:

(a) Each selection board convened under section 611(a) of this title shall submit to the Secretary of the military department concerned a written report, signed by each member of the board, containing a list of the names of the officers it recommends for promotion and certifying (1) that the board has carefully considered the record of each officer whose name was furnished to it under section 615 of this title, and (2) that, in the opinion of *a majority of the members of the board,* the officers recommended for promotion by the board are best qualified for promotion to meet the

needs of the armed force concerned ... among those officers whose names were furnished to the selection board.

(Emphasis added).

Plaintiff claims that the Air Force violated sections 611 and 616(c) because none of the subordinate panels contained a majority of the members of the board as a whole, and because no board members made any specific findings or recommendations. The process allegedly violated sections 616(c) and 617(a) because adding panel members' secret scores did not necessarily equate to a determination by a majority of the board members, or even a majority of an individual panel's members, that those officers recommended for promotion were "fully qualified" or "best qualified." This is so, according to plaintiff, because a panel could, without discussion, generate a high enough score to yield a promotion recommendation without a majority of their number opining that a promotion was warranted. Plaintiff also alleges that the Air Force further breached the requirements of section 617(a) because there was no consensus by a majority of the board members of the candidates to be certified.[2] Thus, plaintiff reasons, the actions of the boards that considered his record are void and ineffective and plaintiff's involuntary retirement is illegal.

*Small v. United States*

Defendant asserts that the procedures of the selection boards in this case are essentially the same as those endorsed by the Federal Circuit in *Small v. United States,* 158 F.3d 576, and *Neptune v. United States,* 38 Fed.Cl. 510 (1997), *aff'd,* 178 F.3d 1306 (Fed.Cir.1998). In *Small,* the Federal Circuit addressed the Air Force's use of the panel system for review boards in 1986 and 1987. It held that the Air Force's interpretation of sections 616 and 617 and its use of the panel system was permissible. 158 F.3d at 581. The court found that the relevant statutes do not

require that a majority determination be based on a knowing review and conscien-

---

**2.** Plaintiff initially alleged that the Air Force violated DoDD 1320.9 because it endorsed the de-centralized nature of the promotion board process. However, plaintiff has apparently abandoned this allegation because he does not challenge the portion of defendant's brief demonstrating compliance with that provision.

tious consideration of each officer's record. Nothing in the plain language of the statute requires first-hand knowledge on the part of the deliberators of an officer's record. All that is required is a numerical showing that more than half of the board members approved or disapproved of the matter before them. ... "[t]here is ... no reason why the business of coming to a 'majority' consensus cannot be accomplished through collective approval of the findings and recommendations of a subgroup-i.e., a selection panel."

*Id.* at 581 (quoting *Small v. United States,* 37 Fed.Cl. 149, 156 (1997)).

Plaintiff attempts to distinguish *Small* by introducing the affidavit of Colonel Kenneth D. Phelps, Jr., USAF, a member of the 1991 lieutenant colonel promotion board. Colonel Phelps states that he was never told which officers were recommended for promotion by his or any other panel of the board and that, near the end of the selection process, he signed his name to a sheet containing only signature blocks for all the board members, which he identified as an "attendance roster" to be attached to the final board report. Colonel Phelps also testified that he was never informed that he was approving anything, since he had been given nothing to approve, and that he could not have certified that the officers recommended were the best qualified for promotion because he did not know who they were and had not seen most of their records.

Plaintiff asserts that this new evidence demonstrates that *Small* was erroneously decided because it was based on the assumptions that board members had sufficient knowledge to approve or disapprove the applicants before them and intended their signatures to effect their approval of the candidates and their certification of the results.[3] 158 F.3d at 578, 581. Plaintiff alleges that the new evidence demonstrates that the board members had no knowledge of any matter to be approved or disapproved and were never asked to decide whether to indorse a slate of candidates. Additionally, Colonel Phelps states that members of his review panel were never instructed that their signatures would effectuate their approval of any candidates or constitute a certification that the process had identified the best qualified officers for promotion; instead, it was his understanding that they signed the report only to indicate their attendance as board members. Thus, plaintiff asserts, there was no consensus or certification within the panels because the board members made no findings or recommendations about the individual records and because they did not engage in collective action.

Colonel Phelps's testimony, as defendant points out, is not directly applicable to this case because he sat on the 1991 promotion board—not the 1989 or 1990 boards which reviewed plaintiff's record. More importantly, the Federal Circuit has already considered and rejected the argument that the signing of a board report in blank is a violation of law. In *Small, Neptune,* and *Fluellen v. United States,* 44 Fed.Cl. 97, each plaintiff argued, on appeal, that the list of promotion selectees was appended to the report only after the board members had signed the signature sheet and, thus, that the signatures did not constitute a ratification of the selection by the full board. Nevertheless, in each case, the Federal Circuit upheld the Air Force's promotion system.[4] The Federal Circuit's decisions are thus controlling.[5] Ac-

---

**3.** *Small,* plaintiff reasons, was based on the "facts before us." 158 F.3d at 581. Those "facts" included the following: "[p]rior to signing the Board Report, each panel member must decide whether to indorse the slate of candidates selected by the individual panels. ... If a majority of the board members adopts and certifies to the foregoing, then the Board Report is finalized and presented to the Secretary of the Air Force." *Id.* at 578.

**4.** "Mr. Small eloquently presents a variety of other arguments in support of his interpretation of these statutory provisions. ... We have con-

sidered these arguments and find them unpersuasive as well." *Small,* 158 F.3d at 581.

**5.** This court has rejected this argument, as well. In *Campa v. United States,* 50 Fed.Cl. 300 (2001), *Chisolm v. United States,* 49 Fed.Cl. 614 (2001), *Fulton v. United States,* 47 Fed.Cl. 503 (2000), *dismissed, Fulton v. United States,* No. 01–5023, 2001 WL 712798 (Fed.Cir. June 5, 2001), this court squarely addressed the arguments that the Air Force had violated sections 611, 616, and 617 because board members, by signing a blank page, had no knowledge of the applicants they purported to certify. The *Chisolm* court found

cordingly, plaintiff's argument that the Air Force violated section 617 by having board members sign a signature sheet that was later attached to the board report fails.

Plaintiff argues, however, that this court cannot accord deference to the *Small* decision because deference may only be afforded to formal agency interpretations that are reflected in regulations or other sources that have "the force of law." *Christensen v. Harris County,* 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000). Plaintiff contends that the *Small* court erred in giving deference to an Air Force interpretation of the statutes that was not reflected in any regulation. Moreover, plaintiff asserts, the interpretation of sections 616 and 617 at issue here and in *Small* were not even written down until 1999. He also contends that the Air Force has changed its interpretation of the statutes, depending upon its immediate purpose, and that, accordingly, we should not afford deference to its interpretation. Thus, plaintiff argues, *Small* should not be deemed precedential because it was based upon deference that the Supreme Court says was improvidently afforded.

Plaintiff misperceives the effect of the appellate decision in *Small. Small* controls our decision here, not because we elect to defer to the Federal Circuit, but because the court spoke directly to the controlling legal issues. Unless the facts are different, which they are

not, given the relevant similarities in the panel systems from 1986 through 1990, the Federal Circuit's decision is controlling. The possibility that a different argument may have been more telling is immaterial.[6]

In *Small,* the Federal Circuit approved both the Air Force's interpretation of sections 616 and 617 and its method of selecting officers for promotion, which included the practice of not furnishing a list of promotion selectees to the promotion board. The alleged change in procedure by the Air Force to furnish board members with such a list does not effect a change in its view of what the statute requires; rather, it reflects an Air Force decision to take actions that the Federal Circuit has already determined in *Small* to be unnecessary, although not forbidden. Thus, the Air Force's interpretation of the statute stands, and plaintiff's argument fails.

*"Fully Qualified" Findings; Rescoring by the Board President*

Plaintiff also argues two issues which he claims were not addressed in *Small.* First, he argues that section 616(c) requires both "recommendations" that officers be promoted and "findings" that those officers are "fully qualified" for promotion. Plaintiff focuses on the Air Force's practice of making the requisite findings by having panel members review the record of the lowest scoring selected candidate (or highest scoring non-candidate).

---

that "board members do not know which officers are recommended for promotion. The board members sign a board report to certify that the officers recommended for promotion are those that are best qualified. The report that the board members sign is a blank page." 49 Fed.Cl. at 616. Nevertheless, relying on *Small* and *Fluellen,* the court held that "majority certification, as required by 10 U.S.C. § 617(a), is fulfilled by each board member signing the Board Report." *Id.* at 621. *Fulton* reached the same conclusion. 47 Fed.Cl. at 506.

More recently, in *Campa,* this court was confronted with a similar assertion. Plaintiffs argued that the selection boards made no certification and no findings that any officers were qualified for promotion. 50 Fed.Cl. at 302. The court noted that the identifies of officers selected as "fully qualified" for promotion were not revealed to panel members, who would sign a blank paper that would later be attached to a

list of the officers selected. *Id.* Nevertheless, the court found that

> [a]lthough plaintiffs have pled some factual differences [between their case and *Small* ], they have not demonstrated that the true Air Force promotion process is materially different from the one described in *Small* and *Fluellen.* The majority of these facts are simply intricate details of the process that the *Small* and *Fluellen* Courts chose not to describe. They do not contradict the facts as presented there. ... Plaintiffs do offer a few factual distinctions. ... These differences are slight and are insufficient to distinguish this case from *Small* and *Fluellen.* Accordingly, plaintiffs' claims that the Air Force promotion process violates 10 U.S.C. §§ 616(c), 617(a) and 612(a)(3) and DoDD 1320.9 fail as a matter of law.

*Id.* at 304.

6. Moreover, since *Christensen,* the Federal Circuit has reaffirmed *Small. See Roane,* 237 F.3d at 1353; *Fluellen,* 225 F.3d at 1300–01.

If a majority of the members agree that the record is fully qualified, the Air Force assumes that all higher-scored records (all records recommended for promotion) are also fully qualified.

Plaintiff argues that the statutorily required "fully qualified" findings about each recommended officer may not be made when the panel members determine that one record is "fully qualified" and the Air Force then assumes that all higher-scored records must also be "fully qualified." Plaintiff employs examples illustrating that, although the majority of the scoring members of a panel may believe officer A's record is inferior to officer B's, and score it accordingly, it is mathematically possible for A to be ranked higher on the final Order of Merit than B.[7] Thus, plaintiff claims that "fully qualified" determinations cannot be based solely upon their hierarchical placement within the panels' Orders of Merit and that the statutorily required findings were not made in this case.

Plaintiff made this same mathematical argument in *Small,* however, as evidenced by his appellate brief in that case. The court, without addressing the argument directly, plainly rejected it by finding that the Air Force's panel method of collective decision-making complied with the relevant statutes. 158 F.3d at 581. Moreover, this court rejected this argument in *Campa.* The *Campa* court entertained the assertion that promotion board members do not "make any 'recommendations' and do not find that any officer is 'fully qualified'" and determined that this argument merely highlights "intricate details" that are "insufficient to distinguish this case from *Small* and *Fluellen.*" *Id.* at 302, 304. We concur with the analysis in *Campa* and thus reject plaintiff's argument that the scores awarded by board members are not the equivalent of findings that an officer is "fully qualified" for promotion.

■ Plaintiff also contests the Air Force's practice of allowing the Board President to return any officer's records to a panel for rescoring and then choose which score to assign. This practice, plaintiff asserts, allows the Board President to unilaterally overrule and negate the will of the majority of the members of the board which, in turn, violates sections 616 and 617, as well as DoDD 1320.12 ¶ G.3.c (1987), which bars any person from directing that a particular officer be selected or non-selected. We disagree.

In *Curtis v. Peters,* 107 F.Supp.2d 1 (D.D.C.2000), the District Court for the District of Columbia considered and upheld a non-active-duty list reserve promotion board scheme in which Board Presidents appeared to have the same authority as Board Presidents in the active-duty list promotion scheme at issue here. Plaintiffs were considered for and denied promotion in the years 1995–97. *Curtis,* 107 F.Supp.2d at 3. They contested the fact that "under the review process, the Board President had the ability to override the wishes of the voting members because he could reject the scoring of one panel, have a second panel score the candidate and then decide which score to use." *Id.* at 8. The district court responded:

> Plaintiffs' argument regarding the Board President fails for the same reasons as their earlier argument regarding the need for collective action. Under defendant's interpretation of the statute, which this Court has already found to be permissible … it is the board members' final consent to the promotion lists that constitutes the recommendation of the majority of the board. The procedure used to arrive at the final lists is irrelevant; it is the board's final consent to those lists that is the legally operative event. The Board President's ability to influence what score a candidate gets at an earlier juncture therefore does

---

7. Assume Record A received 3 scores of 7.5, 8.5, and 9, and that Record B received three 8's and two 7.5's, yielding total scores of 40 and 39, respectively. Record A was scored two half-point increments higher than Record B and ranked higher on the Order of Merit than Record B, even though a majority of the scoring members believed that Record A was inferior to Record B. Assume further that Record B ended up being the lowest scoring record. A panel's majority vote that Record B was "fully qualified" would not automatically mean that a majority would also have found Record A to be "fully qualified" because a majority of the voting members believed that Record A was less qualified than Record B.

not usurp the board's power to make the ultimate decision.

*Id.* We agree. The promotion board's final consent to the promotion lists establishes the recommendation of the majority of the board. We therefore reject plaintiff's complaint with respect to the review board issue

## II. THE ASSIGNMENT ISSUE

Plaintiff alleges that his reassignment to Ofutt as a Plans Officer violated two provisions: a policy handbook applicable to SAC in 1989, known as the Commander Involvement Program ("CIP"), and Air Force Regulation ("AFR") 36–20. Unfortunately, neither party has been able to locate a copy of the SAC CIP policy statement. Instead, plaintiff offers secondary evidence of the policy through the statements of Colonel Phelps and Colonel Dale VanTilborg. In addition, the court has been furnished with a copy of an Air Force-wide policy statement concerning the same subject, although it apparently did not go into effect until 1992. The later CIP, found in the July, 1992 "Officer Volunteer Assignment System Reference Guide," reads as follows:

(1) There are two parts to the CIP. First, a commander involvement RIP [Report on an Individual Person] is generated at specified times (based on your TOS or DEROS) by your CBPO/Military Personnel Flight. It prompts your commander to discuss OPD options and future assignments with you. It is not an assignment consideration/notification action.

(2) The second part of CIP is to ensure your commander or supervisor coordinates on your pending assignment action. Through your MAJCOM we ask your commander for feedback on your qualifications for a job and the appropriateness of the job in your professional development. Prior to finalizing an assignment, a CIP response is required from your commander or supervisor. If you use an AF Form 90 to volunteer for a specific opening or a similar opening for which you are now volunteering, and your AF Form 90 is current, your commander's comments will satisfy the assignment CIP requirement. The CIP ensures you, your commander,

and your MAJCOM are aware of your pending assignment.

Plaintiff asserts that the applicable 1988 SAC CIP program was comparable. Its purpose was to eliminate "bait and switch" maneuvers, by which officers were promised a favorable assignment and then given a poor one. Plaintiff recognizes that the Air Force Personnel Center ("AFPC") has complete discretion to make assignments. He argues, however, that the problem in this case is that, after plaintiff's assignment, SAC violated the CIP by neglecting to inform plaintiff and his commanding officer, Colonel Wiley, of the fact that the Chief of Airfield Management position to which plaintiff was originally assigned was already filled. Plaintiff introduces statements of senior Air Force officers to establish that SAC's CIP required an officer's commander to approve an assignment to a specific job before that officer could be reassigned. More importantly, plaintiff claims, the CIP required that plaintiff and Colonel Wiley, his commander at Minot, be notified when the Chief of Airfield Management position at Ofutt became unavailable, that plaintiff be allowed to decide whether to accept an assignment to whatever position was available, and that Colonel Wiley be allowed to decide whether to release plaintiff from his assignment at Minot under those changed circumstances or to stop plaintiff from being assigned to the non-beneficial position. Plaintiff also points out that Colonel Wiley approved his assignment to Ofutt, but would not have done so if he known plaintiff was to be reassigned to a lower-level position.

Plaintiff's argument runs as follows. Assuming the 1989 SAC CIP program is as Colonel Wiley recalls, his approval of the reassignment was flawed because, in contravention of the policy, he was not informed about the lack of an open slot for plaintiff at Ofutt. Plaintiff further claims that, as a direct result of his illegal assignment, he competed for a promotion in 1989 and 1990 with an impaired record that did not fairly portray his career because it reflected a demotion from Chief of Airfield Management, to Air Operations Officer, and then to Plans Officer. Plaintiff feels that he would have

received a "Definitely Promote" recommendation and would have had a "100% opportunity" for promotion to the grade of lieutenant colonel in 1989 if he had remained Chief of Airfield Management at Minot AFB. He reasons that, because he was assigned to the lower level plans officer position at Ofutt in violation of the CIP, he received only a "Promote" recommendation and, consequently, "almost no chance" for promotion to lieutenant colonel. These circumstances, he claims, resulted in his record before the lieutenant colonel promotion board reflecting a diminution of job responsibility, rather than a steady progression distinguishing him as ready for advancement to lieutenant colonel, and a "Promote" recommendation, rather than a "Definitely Promote." As a direct result of these two blemishes, plaintiff claims, he was not promoted to lieutenant colonel by the 1989 and 1990 promotion boards and was, instead, mandatorily and illegally retired from the Air Force.

Plaintiff also relies on Air Force Regulation ("AFR") 36–20 Paragraph 1–1, applicable to the AFPC, which states that

[t]he primary objective of the officer assignment system is to assign Air Force officers to enhance effective and sustained mission accomplishment .... Assignment decisions are based on Air Force requirements, individual qualifications, professional development, and the policies and procedures in this regulation.

AFR 36–20 ¶ 1–1 (1988). Paragraph 3–1 of that regulation states that "[t]he primary consideration in the assignment selection process is the officer's current or potential qualifications to fill a valid requirement and the nature of the requirement. All other factors ... are secondary." A "requirement" is defined as "[a]n actual or projected vacancy of an authorized officer position ... that has not been filled from personnel resources available to the activity ...." AFR 36–20 Attach. 1.

Plaintiff contends that the Ofutt officials' failure to comply with the CIP, and their subsequent assignment of him to a position which ultimately proved to be occupied, lead to a violation of AFR 36–20. All officials responsible for plaintiff's assignment to Ofutt approved and implemented it, plaintiff asserts, in large part because the Chief of Airfield Management position there was assumed to be currently vacant. Because it was not, and, therefore, because plaintiff could not be assigned to it, plaintiff argues that both he and Colonel Wiley were to be made aware of that fact, at which point Colonel Wiley would have prevented the assignment. Plaintiff contends that the Air Force thwarted the very purpose of the officer assignment process—"to enhance effective and sustained mission accomplishment"—by assigning him to a location where he had no work to do.

■ The simple answer to all these concerns, according to defendant, is that the Air Force's compliance or not with the regulation or the CIP program is irrelevant because it concerns a nonjusticiable matter, namely, reassignment. Defendant cites a long line of authority from both the Federal Circuit and this court for the proposition that duty assignment decisions, like decisions to promote a military officer, "implicate[ ] highly discretionary questions of military judgment and expertise which civilian courts may not second-guess." *See, e.g., Neptune,* 38 Fed.Cl. at 516 (citing *Murphy v. United States,* 993 F.2d 871, 872–74 (Fed.Cir.1993)).

Moreover, defendant argues, because the matter of reassignment is inherently beyond court scrutiny, the CIP program cannot be "violated;" it is aspirational and not enforceable in court. Defendant relies on the affidavit of Vaughn A. Blackstone, an "Assignment Advisor" for the AFPC. Blackstone states that the AFPC is the only entity with the authority to make assignment decisions for the Air Force and that a Major Command (an organizational subdivision of the Air Force), such as SAC, only possesses the authority to make assignment recommendations. Therefore, defendant asserts, plaintiff's only recourse for correcting the error was through appeal within the AFPC.

We agree with defendant's argument in its entirety. SAC may have imprudently assigned plaintiff, and it may have thwarted the intent of the CIP, but plaintiff's case fails, nevertheless. We assume, without deciding, that the 1992 version of the CIP, as

well as the descriptions of that version provided by plaintiff's witnesses, were identical to the version employed in 1988. Therefore, we assume that SAC committed itself to both making assignees and their commanders aware of their assignments and any related developments pertaining thereto, and to giving deference to their input concerning those assignments (i.e., we assume that "[a]lthough the Air Force Military Personnel Center technically had the legal authority over assignments, the reality was that no assignment would be made over a Wing Commander's objection."). VanTilborg Aff. ¶ 2.

■ Ultimately, however, the AFPC controls assignment decisions.[8] Assignments and reassignments are matters wholly internal to the military and inappropriate for judicial review. As the Supreme Court of the United States has stated,

[j]udges are not given the task of running the [military]. The responsibility for setting up channels through which such grievances can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates. The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate [military] matters as the [military] must be scrupulous not to intervene in judicial matters.

*Orloff v. Willoughby*, 345 U.S. 83, 93–94, 73 S.Ct. 534, 97 L.Ed. 842 (1953).

■ In this case, although the AFPC consults with major commands, such as SAC, and although an individual's commander may make recommendations concerning those assignments, the AFPC had exclusive legal authority over plaintiff's assignment. Colonels Phelps, Wiley, and VanTilborg's convictions that they would or could have enforced their role under the CIP by not approving reassignment does not make the CIP any more reliable as a source for plaintiff's enforceable procedural rights. The CIP is a "guide" or handbook and, accordingly, is aspirational—not controlling. It would be utterly inappro-

priate for the court to "enforce" subjective standards in a way that overrode the ultimately discretionary assignment decisions of the AFPC.

Plaintiff's use of AFR 36–20 is also unavailing for the same reason—it furnishes no judicially enforceable standards. AFR 36–20 recognizes that the primary "objective" of the assignment process is to assign officers to "enhance effective and sustained mission accomplishment." ¶ 1–1. The idea is to act in the "best interest of the Air Force." ¶ 10–1. AFR 36–20 directs that officers be assigned in the most useful way possible. Clearly, at some point, the Air Force believed plaintiff's initial assignment to the Chief of Airfield Management position at Ofutt to be in its best interest. Unfortunately, there was a mistake—either someone thought there was a vacancy where none existed, or a projected vacancy did not materialize by the time plaintiff reached Ofutt. We have no reason to believe that the authorities were not acting in the best interests of the Air Force, however, or that they did not wish to enhance effective and sustained mission accomplishment. In either case, the decision could not be subject to meaningful judicial review.

Moreover, AFR 36–20 recognizes the authority of the AFPC to administer the assignment process. Paragraph 1–6c notes that "[l]ieutenant colonels and below are reassigned between MAJCOMs only when directed by HQ AFMPC/DPMRO or HQ AFMPC/DPMRS." In the final analysis, plaintiff's reliance on AFR 36–20 is misplaced because the AFPC had the last word regarding his assignment. Although someone in the Air Force may have mistakenly assigned plaintiff to Ofutt, this does not trigger the court's narrow role in a military pay case in enforcing clear and prejudicial procedural violations.

The rational for this judicial reluctance to become involved in day-to-day military affairs was explained in *Murphy v. United States*. There, plaintiff contested a Reserve Officer Screening Board's ("ROSB") decision to release him from active duty in the

---

8. Plaintiff conceded at oral argument that the Air Force could have ordered his transfer whether he wanted it or not and whether or not Colonel Wiley was willing to release him.

Indiana Air National Guard. He argued that errors in his records evaluated by the Board rendered them inaccurate and, therefore, erroneous. 993 F.2d at 873. This court reviewed and corrected plaintiff's records, ultimately holding that he was unlawfully released from active duty based upon them, and ordered his reinstatement. *Id.* at 871. The Federal Circuit disagreed, finding that "[a]fter the Claims Court reviewed and purported to correct the records, any additional corrective action it devised was the result of nothing more than speculation that the ROSB decision would have been different." *Id.* at 872. Moreover, there were "no tests or standards it could apply to determine whether the officer would have been released even on the court's version of the record." *Id.; see also Bunch v. United States,* 33 Fed.Cl. 337, 340 (1995), *aff'd,* 78 F.3d 605 (Fed.Cir.1996) ("promotion and assignment decisions are exactly the types of decisions that are beyond the scope of judicial review. There are no 'tests and standards' against which the court can evaluate the merits of the ASAR's decisions regarding plaintiff's career."); *but see Kreis v. Secretary of the Air Force,* 866 F.2d 1508 (D.C.Cir.1989) (finding justiciable an Air Force major's claims for correction of his military records); *Suro v. Llenza,* 531 F.Supp. 1094 (D.Puerto Rico 1982) (reviewing the reassignment of a member of the National Guard).[9]

*Murphy* is analogous to the case at hand. The mistake alleged here may well be accessible to the AFBCMR for correction because it has inherent equitable powers. But it is not the sort of problem that courts can supervise. Moreover, granting plaintiff relief

would depend on a lengthy string of assumptions, any one of which could be trumped by the Air Force's inherent control over reassignments. First, plaintiff would have to establish that he would not have taken the job at Ofutt if he had known it would not be available. However, his August 10, 1990, letter to the Board for Corrections of Air Force Records indicates otherwise. Second, he would have to establish that he or his commander would have refused the assignment to Ofutt. Third, he would have to establish that he would have been recommended for promotion to lieutenant colonel if he had remained at Minot. Despite Colonel Wiley's affidavit, this is ultimately completely speculative. Fourth, plaintiff would have to establish that his assumption of the position of Plans Officer at Ofutt was the reason he did not receive a promotion. We decline the invitation to order relief based on these assumptions.

In short, the military has the right to make garden-variety mistakes of judgment and execution without provoking judicial oversight. Only if the military binds itself to judicially enforceable procedures can this court become involved.[10] The second issue is thus nonjusticiable.

## CONCLUSION

Defendant's motion for summary judgment is granted. Plaintiff's cross-motion for summary judgment is denied. The clerk is directed to enter judgment accordingly. Each side to bear its own costs.

---

9. *See also Sebra v. Neville,* 801 F.2d 1135 (9th Cir.1986) (finding nonjusticiable a National Guard employee's suit to preliminarily enjoin transfer to another base); *Schlanger v. United States,* 586 F.2d 667 (9th Cir.1978) (finding nonjusticiable the Air Force's decision to remove plaintiff from one of its programs and reassign him elsewhere); *Noyd v. McNamara,* 378 F.2d 538 (10th Cir.1967) (finding nonjusticiable an Air Force officer's action to require the Air Force to assign him to different duty assignment); *Bond v. United States,* 47 Fed.Cl. 641 (2000) (noting that neither *Sebra, Schlanger,* or *Noyd* involved tests and standards available for their respective courts to apply).

10. We note, finally, that plaintiff made a mistake, as well. He concedes, in a letter to the Board for Corrections of Air Force Records dated August 10, 1990, that, prior to his transfer, he received a call from *Airfield Management* personnel at Ofutt "who wanted to know why I was coming because the current Chief of Airfield Management wasn't leaving or retiring ...." At this point, plaintiff could have notified Colonel Wiley, who could have submitted a protest to the Major Command for consideration and possible forwarding to the AFPC. AFPC could have then considered the issue. Plaintiff did not take advantage of this process; instead, he simply moved to Ofutt.