Robert B. BATESON, et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 96–40 C.

United States Court of Federal Claims.

Jan. 28, 2002.

Guy J. Ferrante, Springfield, VA, for plaintiffs.

John C. Einstman, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant, with whom were Robert E. Kirschman, Assistant Director; David M. Cohen, Director; and Stuart E. Schiffer, Acting Assistant Attorney General. Captain Michael Sumner, United States Air Force, Arlington, VA, of counsel.

## OPINION

DAMICH, Judge.

This case is before the Court on Defendant's motion to dismiss and motion for judgment upon the administrative record pursuant to Rules of the Court of Federal Claims ("RCFC") 12(b)(4); and Plaintiffs' cross-motion for judgment on the administrative record pursuant to RCFC 56.1. Plaintiffs, twelve former United States Air Force officers, allege that certain procedures used by the Air Force in evaluating them for promotion violated 10 U.S.C. §§ 611, 616(c) and 617(c), as well as Department of Defense Directive 1320.9. Plaintiffs ask that they be compensated for all pay, allowances, and other benefits that they have not received since their separation from the Air Force. They also seek the adjustment of their military records to reflect continuous active duty through the date of judgment, and the option of reinstatement to active duty. For the reasons enumerated below, this Court GRANTS in part, and DENIES in part Defendant's motion to dismiss and GRANTS Defendant's motion for judgment on the administrative record.

### I. Background

#### A. Plaintiffs' Separation From The Air Force

Plaintiffs are twelve former United States Air Force officers. Plaintiffs Bateson, Bond, Brown, Cohen, Davis, Long, Seward, Siniard and Wineinger were majors who were passed over for promotion to the grade of lieutenant colonel. Plaintiffs Dolark, Holmes and Lawton were captains who were passed over for promotion to the grade of major. All were passed over by Officer Promotion Selection Boards held in calendar years 1985 through 1995.

Plaintiffs Bateson, Cohen, Davis and Long retired from the Air Force in 1990 as majors after serving the maximum number of years of service permitted for majors. Plaintiffs Seward, Brown, Bond and Wineinger retired in 1991, 1992, 1994, and 1995, respectively, as majors after serving the maximum number of years of service permitted for majors. Plain-

tiff Lawton retired as a captain in 1994 pursuant to section 4403 of the FY 93 National Defense Authorization Act, which allowed retirement after 15 years of active-duty service. Plaintiff Holmes was honorably discharged as a captain in 1996 after non-selection for promotion to the grade of major. Plaintiff Siniard retired as a major in 1995 after completing enough service for retirement.

In 1988, Plaintiff Dolark was passed over for promotion to major by a selection board. (Pls.' Reply at App. 2.) According to a document submitted by Plaintiff Dolark, he was passed over for promotion a second time on September 28, 1987. (Pls.' Reply at App. 4.) This document is undated, unsigned, and is not written on Air Force letterhead. In addition, Plaintiff Dolark submitted a letter from the Air Force to Senator Alan Cranston, dated April 22, 1988, which stated that Dolark's "mandatory date of separation (DOS) is based on his second failure of promotion to major," and that Dolark was not permitted to remain on active duty until eligible for retirement because he had not served 18 years of active duty as required by 10 U.S.C. § 632(a)(3). Although Dolark was separated on April 30, 1998, because he had previously served in an enlisted status and had received an honorable discharge as an officer, he was permitted to re-enlist, pursuant to 10 U.S.C. § 8258, in his prior enlisted grade in order to serve the additional time needed for an active duty retirement. (Pls.' Reply at 6, 9.) Plaintiff Dolark re-enlisted until he retired from active duty as a captain in 1990.

Majors Brown and Seward submitted applications to the Air Force Board for the Correction of Military Records (AFBCMR), and asked that the AFBCMR nullify their non-selections to the grade of lieutenant colonel, and grant them retirement from the Air Force at the grade of lieutenant colonel, as well as back pay and allowances. The AFBCMR secured advisory opinions pertaining to Majors Brown and Seward from the Office of the Selection Board Secretariat. These opinions indicated that the selection board process had been used for many years, complied with controlling statutes, and had been reviewed for compliance as late as February 1992 by the Headquarters United States Air Force General Law Division and the Air Force Military Personnel Command Judge Advocate. Plaintiffs Brown and Seward filed responses to these advisory opinions, and the AFBCMR, after reviewing plaintiffs' applications and responses and the advisory opinions, and determining that not enough relevant evidence had been presented to demonstrate the existence of probable error or injustice, denied relief.

### B. Procedures Used By Air Force Promotion Selection Boards

Each Air Force promotion selection board, which is generally comprised of 40–45 members, selects officers by subdividing into panels of five members. The Air Force distributes the records of officer candidates for promotion by means of a reverse social security number system to ensure a random distribution of records. Each panel receives the records of 20 officers until the records of all candidates are distributed. Once all records are distributed, each panel member separately scores the candidates' records. The records are scored on a scale of 6 to 10, in half-point increments. The scores given to each candidate by each panel member are totaled and ranked in the order of merit.

Each panel recommends officers for promotion based on the proportionate share of the records the panel received. Each panel recommends candidates for promotion based on the ranking of the candidates beginning with the highest score. Candidates are chosen sequentially until the remaining number of candidates with the same score exceeds the remaining available promotion positions. These candidates are deemed to be in the "grey zone." The records of the candidates in the "grey zone" are then re-scored.

To ensure that the scores of the different panels are consistent, after 240 records are scored, the selection board generates an initial order of merit for each panel, including a sample grey zone. The secretariat and the president of the selection board then examine the sample grey zones to determine if there are any significant deviations among scores between the panels. In addition, the board president utilized a computer model, which

used a projected order of merit ("POM") that analyzed the prior year's promotion selection results and weighed factors of selection criteria to predict how an actual record would fare under the prior board. If the board president determines that there is an inconsistency or deviation in scoring, the records may be sent to a second panel for re-scoring.

After each panel identifies the candidates selected for promotion, the board members submit a written report to the Secretary of the Air Force regarding the results for his consideration.

## II. Standard for a Motion to Dismiss

"A motion to dismiss under Rule 12(b)(4) for failure to state a claim upon which relief can be granted is appropriate when the facts asserted by the claimant do not under the law entitle him to a remedy." *Perez v. United States*, 156 F.3d 1366, 1370 (Fed.Cir.1998). "In reviewing the dismissal under Rule 12(b)(4), we are mindful that we must assume all well-pled factual allegations as true and make all reasonable inferences in favor of . . . the nonmovant." *Id.* "Dismissal under Rule 12(b)(4) is appropriate only when it is beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief." (Citations omitted; internal quotation marks omitted.) *Ponder v. United States*, 117 F.3d 549, 552 (Fed.Cir.1997), *cert. denied*, 522 U.S. 1110, 118 S.Ct. 1040, 140 L.Ed.2d 106 (1998).

The court looks to the complaint to make sure that Plaintiff has made factual allegations with respect to all the required elements. *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed.Cir.2001) (looking to the complaint after stating that defendant's "contract claim turn[ed] on the adequacy of its pleading."); *Morris v. United States*, 33 Fed.Cl. 733, 743 (1995) ("In considering such a motion, the scope of our inquiry is confined to the facts alleged in the complaint, which we presume to be true and correct."). "Because granting [a motion to dismiss] terminates the case on the merits, courts broadly construe the complaint, particularly in light of the liberal pleading re-

quirements under the Federal Rules of Civil Procedure." *Ponder*, 117 F.3d at 552–53. However, "legal conclusions, deductions, or opinions couched as factual allegations are not given a presumption of truthfulness." 2A JAMES WM. MOORE ET AL., *MOORE'S FEDERAL PRACTICE* ¶ 12.07[2–5] (2d ed.1994); *McEntee v. United States*, 30 Fed.Cl. 178, 183 (1993), *aff'd*, 39 F.3d 1197 (Fed.Cir.1994) (table).

## III. Analysis

The Tucker Act, 28 U.S.C. § 1491, provides for jurisdiction in this Court founded upon either the Constitution, a statute, or regulation, or an express or implied contract against the United States. However, in order to properly state a claim under the Tucker Act in this Court, Plaintiffs must point to "a substantive right in the Constitution, an act of Congress, or an executive department regulation on which to base his claim". *Dehne v. United States*, 970 F.2d 890, 893 (Fed.Cir.1992). The substantive right alleged must be one that mandates the payment of money. *Id.* (citing *United States v. Mitchell*, 463 U.S. 206, 216–17, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) and *United States v. Testan*, 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976)). If a service member voluntarily retires from the military, he retains no statutory entitlement to compensation, and therefore cannot state a claim under the Tucker Act. *Adkins v. United States*, 68 F.3d 1317, 1321 (Fed.Cir.1995); *Kim v. United States*, 47 Fed.Cl. 493, 496 (2000). Separations are presumed to be voluntary and plaintiffs bear the burden of establishing that the separation was involuntary. *Christie v. United States*, 518 F.2d 584, 207 Ct.Cl. 333, 338 (1975). Determination of whether a separation is voluntary requires an examination of all of the surrounding facts and circumstances. *Covington v. Dep't of Health and Human Services*, 750 F.2d 937, 941–42 (Fed.Cir.1984).

In its motion to dismiss, Defendant argues that Plaintiffs Dolark and Siniard have not established sufficient evidence to prove that their retirements were involuntary.[1] Howev-

---

1. Defendant originally argued that Plaintiff Law-    son's retirement was voluntary, but conceded

er, in its reply brief, Defendant concedes that if Plaintiffs carry the burden of proof that Dolark and Siniard were retired pursuant to 10 U.S.C. § 632(a), then 10 U.S.C. § 632(b) directs that the retirement shall be deemed involuntary. (Def.'s Reply at 22 n. 14.)

■ Plaintiff Dolark has rebutted the presumption that his retirement was voluntary. The document which purports to serve as notice that he was passed over twice, standing alone, cannot prove that he was involuntarily retired pursuant to 10 U.S.C. § 632(a). Because the document is unsigned, undated, and not printed on Air Force letterhead, the document cannot be authenticated. However, the Air Force's letter to Senator Alan Cranston indicates that pursuant to 10 U.S.C. § 632(a), Dolark was to be separated from the Air Force after having been passed over for major on two occasions.

Moreover, the circumstances surrounding Dolark's retirement are similar to the retirement in *Mai v. United States*, 22 Cl.Ct. 664 (1991), *aff'd* 975 F.2d 868 (Fed.Cir.1992). In *Mai*, an Air Force officer was passed over for promotion by two successive selection boards. As a result, he was involuntarily released from active duty. The officer subsequently re-enlisted in the Air Force and served continuously until he was eligible for voluntary retirement. *Mai* filed suit challenging the original decision by the selection boards in passing him over for promotion. The Government implicitly conceded that, for the purposes of subject matter jurisdiction, the officer's separation was involuntary. *Mai*, 22 Cl.Ct. at 672. Although Defendant, in this case, alleges that Plaintiff Dolark failed to state a claim, the logic is similar. The basis for the claim is his involuntary separation as an officer in 1988 rather than his voluntary separation from enlisted status in 1990. Accordingly, Defendant's motion to dismiss Plaintiff Dolark's claim is denied.

■ However, Plaintiff Siniard has failed to rebut the presumption that his retirement was voluntary. Plaintiff Siniard filed a declaration stating that he was passed over twice for promotion to lieutenant colonel, but that the records are in storage in the United

States and he cannot retrieve them because he is currently employed in Saudi Arabia. (Pls.' Reply at App. 1.) However, the burden is on Plaintiff to produce such records that he admits to having retained. It was Plaintiff's responsibility to keep his military records at a convenient location during the course of the lengthy stay in these proceedings. Unlike the situation in *Hendler v. United States*, 952 F.2d 1364, 1380 (Fed.Cir. 1991), it was not strictly necessary for the Plaintiff to seek from the Government information that the Government possessed in order to avoid dismissal of the case. While it is true that Defendant should have filed Plaintiff Siniard's records from the Master Personnel Record Group, Plaintiff is not thereby discharged from his burden to produce records that are in his possession. Therefore, Defendant's motion to dismiss Plaintiff Siniard's claim is granted.

## IV. Standard of Review for Motion for Judgment upon the Administrative Record

### A. Standard of Review

"When called upon to review a decision of a corrections board, or of a Secretary taken upon recommendation from a corrections board, the standard of review is whether the decision is arbitrary, capricious, unsupported by substantial evidence, or contrary to law." *Porter v. United States*, 163 F.3d 1304, 1312 (Fed.Cir.1998). Plaintiffs bear the burden of demonstrating, by cogent and clearly convincing evidence, that the Secretary's decision to select other officers for promotion over them was the product of a material legal error or injustice. *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed.Cir.1986). Plaintiffs must overcome the presumption that military officers, like other public officials, discharge their duties correctly, lawfully, and in good faith. *Hoffman v. United States*, 894 F.2d 380, 385 (Fed.Cir.1990). Similarly, this Court has recognized, in a related case, that "[t]he decision to promote an officer, as well as the method by which the decision is made, implicates highly discretionary questions of military judgment and expertise that civilian

that his retirement was involuntary. (Def.'s Reply at 21.)

courts may not second-guess." *Neptune v. United States*, 38 Fed.Cl. 510, 516 (1997), *aff'd*, 178 F.3d 1306 (Fed.Cir.1998).

### B. The *Chevron* Doctrine and Judicial Deference

■ In *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), the Supreme Court discussed the deference that should be given to administrative agencies: "We have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations." The Court further remarked:

> When a court reviews an agency's construction of a statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress .... [I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Id.* at 842–43, 104 S.Ct. 2778.

The Federal Circuit in *Small v. United States*, 158 F.3d 576 (1998), cited the *Chevron* opinion and applied it to the Air Force's use of a panel evaluation system in the officer promotion process:

> With regard to the statutory provisions cited by Mr. Small, Congress has not spoken to the issue of whether the selection board must conduct itself as a collective body. The statutory provisions do not contain any specific methodology that the selection board must use in carrying out its deliberative process. In addition, the parties direct us to nothing in the legislative history that would reveal Congress' intent with regard to these issues and we have

found no guidance in our review of the legislative history.

158 F.3d at 581.

Plaintiffs argue that *Chevron* deference is inappropriate here because of the Supreme Court decision in *Christensen v. Harris County*, 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) ("Interpretations such as those in opinion letters-like interpretations in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law-do not warrant *Chevron*-style deference."). However, in *Christensen*, the Supreme Court considered the force of law of an opinion letter, and not a statute or Directive. *See id.* Moreover, in *Fluellen v. United States* (decided after *Christensen*), Judge Hewitt followed the *Small* court's reasoning as it applied the *Chevron* doctrine. *Fluellen v. United States*, 44 Fed.Cl. 97, 103–04 (1999), *aff'd*, 225 F.3d 1298 (Fed.Cir.2000). Thus, in reviewing the decision of the corrections board, the *Fluellen* court acknowledged that "judicial deference" must be "at its apogee" in matters pertaining to the military, *Fluellen*, 44 Fed.Cl. at 100 (quoting *Voge v. United States*, 844 F.2d 776, 779 (1988)), and that "strong policies compel the court to allow the widest possible latitude to the armed services in their administration of personnel matters." *Id.* (quoting *Sanders v. United States*, 219 Ct.Cl. 285, 302, 594 F.2d 804 (1979)). Therefore, it is proper for this Court to give *Chevron* deference to the Air Force interpretations of the relevant statutes and Directive 1320.9.

## V. Discussion

In *Small*, the Federal Circuit held that the Air Force's use of a panel evaluation system in the officer promotion process complies with statutory requirements. *Small*, 158 F.3d at 581. Furthermore, in *Fluellen*, the Federal Circuit held that the Air Force's use of panels in the promotion review boards was in accordance with DoD Directive 1320.9. *Fluellen v. United States*, 225 F.3d 1298, 1301 (Fed.Cir.2000). Plaintiffs are aware of these decisions, but insist that their case is factually distinguishable. In their cross-motion for judgment upon the administrative record, Plaintiffs claim that they "rely upon

evidence of different facts, much of which was not previously available, that distinguish [their] case from *Small*." (Pls.' Cross–Mot. at 4.) They claim that "*Small* is not dispositive in this case of manifestly different factual evidence of how promotion boards operate." *Id.* Instead, Plaintiffs contend that the officer promotion process violated 10 U.S.C. §§ 611, 616(c), 617, and DoD Directive 1320.9.

10 U.S.C. § 611 provides in relevant part: Under regulations prescribed by the Secretary of Defense, the Secretary of the military department concerned, whenever the needs of the service require, shall convene selection boards to recommend for promotion to the next higher permanent grade, under subchapter II of this chapter, officers on the active-duty list in each permanent grade from first lieutenant through brigadier general in the Army, Air Force, or Marine Corps and from lieutenant (junior grade) through rear admiral.

10 U.S.C. § 616(c) provides that:
A selection board convened under 611(a) of this title may not recommend an officer for promotion unless-

(1) the officer receives the recommendation of a majority of the members of the board; and

(2) a majority of the members of the board finds that the officer is fully qualified for promotion.

10 U.S.C. § 617(c) provides, in relevant part,
Each selection board convened under section 611(a) of this title shall submit to the Secretary of the military department concerned a written report, signed by each member of the board, containing a list of the names of the officers it recommends for promotion and certifying:

(1) that the board has carefully considered the record of each officer whose name was furnished to it under section 615 of this title, and

(2) that, in the opinion of a majority of the members of the board, the officers recommended for promotion by the board are best qualified for promotion to meet the needs of the

armed forces concerned (as noted in the guidelines or information furnished the board under 615(b) of this title) among those officers whose names were furnished to the selection board.

DoD Directive 1320.9 ¶ d.1.a. provides in relevant part:
a. *Centralized Selection.* To ensure fairness in the promotion selection process and a balanced appraisal of the needs of the Military Service concerned, a single board shall be convened to consider all eligible officers in the same grade and competitive category for promotion . . . .

(Def.'s Mot. at App. 25.)

In particular, Plaintiffs claim that: (1) DoD Directive 1320.9 was violated by "the decentralized consideration that Plaintiffs received"; (2) section 616(c) was violated by the lack of findings that the recommended officers were "fully qualified" for promotion; (3) the editing of candidate lists negated the statutorily required certification; (4) there was no uniform application of common and identifiable criteria; (5) the Secretary's approval of the method of selection was absent; (6) the manner in which the Board Reports were signed does not comply with 10 U.S.C. §§ 616(c) and 617(a); and (7) the board president manipulated the use of the "Projected Order of Merit" to reach pre-ordained results in the selection process.

Although Plaintiffs aggressively argue their case, they do not provide the Court with any evidence that distinguishes their case from that of *Small* and the cases that followed it.

A. Department of Defense Directive 1320.9 Was Not Violated by the Use of Sub-panels.

■ Plaintiffs claim that DoD Directive 1320.9 ¶ d.1.a. was violated by "the decentralized consideration that Plaintiffs received." (Pls.' Cross–Mot. at 13.)

Plaintiffs argue that the Directive demands a centralized selection board and that the use of panels violates this requirement. Plaintiffs correctly note that Directive 1320.9

was not at issue in *Small*, but they incorrectly reason that its absence distinguishes their case. The Federal Circuit in *Roane v. United States*, 237 F.3d 1352 (2001), held that DoD Directive 1320.9 did not bar the Air Force Promotion Board from dividing into smaller panels. The court stated: "Although *Small* did not directly address the DoD Directive, and *Fluellen* is distinguishable on its facts, the two cases read together convince us that the reasoning of those cases dictates the outcome in this one." *Roane*, 237 F.3d at 1353. The claimed violation of DoD Directive 1320.9 does not distinguish Plaintiffs' case from *Small*. Therefore, DoD Directive 1320.9 was not violated by the use of panels on Air Force selection boards.

**B. The Selection Board Made the Necessary Findings Under 10 U.S.C. § 616(c).**

▮ Plaintiffs argue that section 616(c) was violated by the lack of "findings" that the recommended officers were "fully qualified" for promotion. (Pls.' Cross–Mot. at 18.) Plaintiffs maintain that the numerical scores do not amount to findings and that the use of this method of evaluation is illogical and mathematically unsound. *Id.* at 19.

Plaintiffs present a hypothetical in which a panel grants Record A three scores of 7.5, one score of 8.5, and one score of 9. Record B receives three scores of 8 and two scores of 7.5, yielding respectively total scores of 40 and 39. Thus, in the eyes of the selection board, Record A is scored two half-point increments higher than Record B and ranks higher overall than Record B, even though a majority of the scoring members of the panel found Record A inferior to Record B. (Pls.' Cross–Mot. at 19.)

Plaintiffs essentially are objecting to the Air Force's use of averaging, or the arithmetic mean in their promotion decisions. However, in *Small*, the Federal Circuit held that section 616(c) "does not require that a majority determination be based on a knowing review and conscientious consideration of each officer's record .... All that is required is a numerical showing that more than half of the board members approved or disapproved

of the matter before them." *Small*, 158 F.3d at 581.

Plaintiffs' hypothetical makes too much of minor arithmetical anomalies that may occur as a result of averaging scores. Consequently, this Court holds that the Air Force's averaging of scores is premised upon a permissible construction of section 616(c). *See King v. United States*, 50 Fed.Cl. 701, 707 (2001); *Campa v. United States*, 50 Fed.Cl. 300, 304 (2001).

**C. Evidence of an Editing Scheme Is Not Persuasive.**

Plaintiffs provide declarations that the Air Force edited lists, and routinely altered and re-sequenced them to accommodate or eliminate officers with lesser credentials. (Pls.' Cross–Mot. at 20; App. at 277.) One of the cited declarations was delivered by Major Larry Neptune, plaintiff in *Neptune v. United States*, 38 Fed.Cl. 510 (1997), *aff'd*, 178 F.3d 1306 (Fed.Cir.1998). Major Neptune made the same claim in his 1997 suit against the Government, but the court rejected it and granted defendant's motion for judgment on the administrative record.

Neptune based his allegation on the language in Air Force Pamphlet 36–32 which states that processing the board results involves "editing lists, preparing memoranda and documents needed to transmit board results," and that "the preparation, reproduction, and routing of the board proceedings to the President takes about six weeks." (Def.'s Mot.App. at 81, AFP 36–32.) When Plaintiffs' counsel asked about the meaning of the phrase "editing lists," the Air Force responded:

> [T]he term 'editing lists' has been included in Air Force Pamphlet 36–32 ... since its first publication in 1983 .... As a result of the confusion that may have been created by this terminology, we made a request earlier this year to the [office of primary responsibility] of the pamphlet to change this verbiage. Again, the task of the Selection Board Secretariat is to ensure [that] the alpha select list that is an attachment to the board report submitted to the Assistant Secretary of Defense, Force Management Policy, contains the correct

number and correct names of the officers recommended for promotion by the board.

(Def.'s Opp'n to Pls.' Cross–Mot. App. at 3.)

Plaintiffs provide no evidence of an editing scheme, and this argument does not distinguish their claim from the Federal Circuit precedents.

### D. A Uniform Board Standard of Scoring Does Not Require that the Scores Be Identical.

■ Plaintiffs claim that one of the factual premises underlying *Small* was that the preliminary training of board members "establish[ed] a uniform board standard of scoring." *Small,* 158 F.3d at 578. They argue that because there is a 44% possible variance in the scores (the Air Force only re-scores records when the scores deviate by 2 or more points), the method is in no way uniform. (Pls.' Cross–Mot. at 5.) In addition, they argue that the use of the "whole person concept" in evaluating an officer for promotion is too subjective to be considered uniform. *Id.* Air Force Regulation 36–89 reads:

2–6 Whole Person Concept. Board members use the whole person concept to subjectively assess each eligible officer's relative potential to serve in the next higher grade. The whole person concept includes such factors as performance, leadership, professional competence, breadth of experience, job responsibility, academic and professional education, and specific achievements.

(Def.'s Mot.App. at 43.)

In evaluating candidates who have very similar credentials and experience, it is clear that there must be some subjective evaluation in order to choose among them. The "whole person concept" provides criteria for experienced and trained officers-who are under oath to resist prejudice-to guide them in selecting the best candidates for promotion. In light of this, the Court should note that the statutes do not require perfect objectivity or even a "knowing review." *Small,* 158 F.3d at 581. The *Small* court held:

Nothing in the plain language of the statute requires first-hand knowledge on the part of the deliberators of an officer's rec-

ord. All that is required is a numerical showing that more than half of the board members approved or disapproved of the matter before them .... A review of a selected number of individuals by sub-panels who use common and identifiable criteria is an efficacious and equitable means to establish the final rankings that are in fact approved by a majority of the members of the board.

*Id.*

### E. The Method of Selection Was Approved by the Secretary.

Plaintiffs' attempt to distinguish their case from *Small* by arguing that *Small* was based on the false factual premise that the method of selection was approved by the Secretary of the Air Force. They claim that new evidence shows that the Secretary only approved the question of whether the board would use the "fully qualified" method or the "best qualified" method. (Pls.' Cross–Mot. at 8.) The evidence that Plaintiffs provide for this allegation is the deposition of Mr. Howard G. Clayton, taken in *Chisolm v. United States,* 49 Fed.Cl. 614 (2001).

In reading the deposition, it is not only unclear whether Mr. Clayton understood the nature of plaintiffs' line of questioning, but plaintiffs fail to explain how evidence of this type of Secretarial approval distinguishes their case from *Small.* They provide no evidence that the *Small* court believed that approval of the method of selection was anything other than what Mr. Clayton described.

In *Small,* the court described the procedures used in the selection board process as follows: "Prior to the convening of each promotion board, the eligibility criteria, method of selection, promotion quota, and statistical data are submitted to and approved by either the Secretary of the Air Force or the Assistant Secretary of the Air Force for Manpower and Reserve Affairs." *Small,* 158 F.3d at 578. With a knowledge of this procedure, the court ruled in favor of the Government. Absent further proof that the Secretary "never approved many aspects of the board procedure at issue in this case" (Pls.' Cross–Mot. at 8), and in light of the appropriate standard of review, there is little basis for a

finding by this Court that the method of selection lacked Secretarial approval.

F. The Manner in Which the Board Report is Signed is a Legitimate Means for the Members to Express Their Approval.

■ At the end of a selection board session, the board formally submits a "Board Report" to the Secretary of the Air Force summarizing the results of the session. *Small*, 158 F.3d at 578. Each panel member must sign the Board Report certifying that the board has (1) carefully considered the record of each officer and (2) recommended for promotion only those candidates found to be the "best qualified" for promotion. When a majority of the board members sign and certify the Board Report, it is then submitted to the Secretary of the Air Force. *Id.* Plaintiffs claim that "[c]ontrary to a central underlying premise of *Small*, there was nothing for the members to approve or indorse, and the majority findings and recommendations required by Section 616 were never made." (Pls.' Cross–Mot. at 10.) Plaintiffs make this claim because the Board Report does not contain the names of the recommended officers; it is "a blank signature roster." *Id.*

However, plaintiff in *Small* presented the same argument, contending that "the current process is no more than an empty ritual, with each panel merely adopting the results reported by other panels and submitting the combined results as a majority action rather than actually making a majority finding and recommendation." *Small*, 158 F.3d at 580. The Federal Circuit responded to this argument by noting that the statutes do not require a "knowing review and conscientious consideration of each officer's record .... In addition, using the signing of the Board Report as a means for the members to both express their approval of the recommended candidates and make the required certification is permissible under the statutory scheme as well." *Id.* at 581. Plaintiffs' attempt to factually distinguish their case from

*Small*, based on the signing of the board report, is unsuccessful.

In supplemental filings, Plaintiffs submitted two declarations by Col. Kenneth D. Phelps USAF (Ret.) that were initially filed in a similar case before this court. *See King v. United States*, 50 Fed.Cl. at 705. Col. Phelps was a member of the 1991 lieutenant colonel promotion board. He states that he signed his name to a blank page containing only signature blocks that later was attached to the board report, and that he was unaware of which officers were recommended for promotion. He also states that he was never informed that he was approving anything and never knew that his signature represented approval of any candidates. Instead, he believed that he was only signing an attendance roster. Thus, argue Plaintiffs, § 617 was violated by board members when they signed a signature sheet later attached to the board report because, in so doing, the board members did not know whom they recommended for promotion.[2] (Pls.' Mot. to File Supp. Evid. at App. 1–3 & Pls.' Reply at App. 2.)

However, there is no significant difference between the facts alleged in this case and that of the promotional systems upheld by the Federal Circuit in *Small* and *Fluellen*. In *Small*, Major Small argues that 10 U.S.C. "§ 617(a) is violated when (a) none of the members know whom they are 'recommending' for promotion and (b) board members affirm their faith in the selection process rather than certifying the existence of a majority consensus about the officers who are best qualified for promotion." *Small*, 158 F.3d at 580. The Federal Circuit has already determined that the signing of a board report in blank is not a violation of law. Nevertheless, the Federal Circuit upheld the promotion selection procedures.

Moreover, on appeal in *Fluellen*, an attempt was made to distinguish that case from the holding in *Small* insofar as there was:

"no regulation or other document in the record of this case support[ing] a finding that members approved anything by signing the report. To the contrary, the mea-

---

**2.** Notwithstanding this declaration, the court held that the facts were not distinguishable from

*Small. King*, 50 Fed.Cl. at 705–06.

ger record evidence on the subject actually suggests that such approval never took place .... [T]he instructions that were read to the promotion board members ... do not indicate what, if anything, was approved when signing the signature page."

In *Baker v. United States,* 127 F.3d 1081, 1088–89 (Fed.Cir.1997), this Court noted that a non-board member's "statement about how he thinks the individual voting board members acted is hardly reliable, given that there was no basis for [the non-board member] to state what the board members did or did not do in their own minds."[3] In this case, we do not even have the rationalization of a non-board member to support the court's assumptions about what board members did ....

(Def.'s Opp'n to Pls.' Mot. to File Supp. Evid. at App. 8–9 (last alteration in original.))

Nevertheless, following *Small,* the Federal Circuit upheld the promotion board procedures. *Fluellen,* 225 F.3d at 1298.

Furthermore, this court has, following *Small* and *Fluellen,* consistently rejected the argument that the Air Force violated sections 611, 616, and 617 because promotion board members signed blank pages without knowledge of the candidates to be certified. *King v. United States,* 50 Fed.Cl. at 705–06; *Campa v. United States,* 50 Fed.Cl. at 304; *Chisolm v. United States,* 49 Fed.Cl. at 621; *Fulton v. United States,* 47 Fed.Cl. 503, 506 (2000). As well-articulated in *Campa,* "[t]he majority of these facts are simply intricate details of the process that the *Small* and *Fluellen* Courts chose not to describe. They do not contradict the facts as presented above." *Campa,* 50 Fed.Cl. at 304. In the present case, the King declaration does nothing more than reveal, in further detail, the same alleged deficiency that the Federal Circuit has upheld in *Small* and *Fluellen.*

Therefore, the Court finds that the manner in which the board members signed the board report is not distinguishable from *Small.*

**3.** It is particularly significant that Plaintiffs rely upon the same quote from *Baker* for the same

### G. Use of the Projected Order of Merit Has Been Approved.

Plaintiffs argue that the use of the Projected Order of Merit ("POM") enabled the board president "to have records re-scored by different panels until receiving scores that were 'in line with his perception' and 'comport[ed] with his opinion.'" (Pls.' Cross–Mot. at 21.) They further claim that this process was never approved by the Secretary of the Air Force. *Id.*

Although the use of the POM has never been explicitly affirmed by the Federal Circuit, Judge Tidwell in *Neptune* acknowledged its function and granted the motion for judgment in favor of the Government. *Neptune,* 38 Fed.Cl. at 512, 517. The court held that "Congress's knowledge of the panel system and its failure to criticize it in the report, implies approval of the Air Force panel system." *Id.* at 515. This reasoning can similarly be applied to the use of the POM. Congress had knowledge of the use of the POM and Plaintiffs do not provide any evidence that its use was criticized. As mentioned above, strong policies compel the Court to grant the armed services considerable latitude with regard to the administration of their personnel matters. *See also Fluellen,* 44 Fed.Cl. at 100.

The partial discussion of the POM in *Neptune,* while helpful, does not necessarily provide this Court with enough analysis to dispose of Plaintiffs' claim. However, Plaintiffs simply do not provide sufficient evidence to support this claim. They allege that the board president arranged for different panels to re-score records so that they were "in line with his perception" and "comport[ed] with his opinion." To support this claim, Plaintiffs offer the deposition of Mr. Howard Clayton, taken in the *Chisolm* case discussed above. (Pls.' App. at 112–13.) Clayton's statements in this deposition, even tailored as they are in Plaintiffs' pleadings, do not support a finding that excessive re-scoring occurred, or that the board president abused his discretion in the direction of re-scoring.

Plaintiffs further claim that the POM was never approved by the Secretary of the Air

proposition. (Pls.' Mot. to File Supp. Evid. at 1.)

Force. (Pls.' Cross–Mot. at 21.) For this claim, too, they rely on the Clayton deposition. However, as Clayton stated in his deposition that he did not know whether the Secretary of the Air Force approved the POM, Plaintiffs have provided insufficient evidence in support of the claim that the POM lacked Secretarial approval.

## VI.  Conclusion

For the reasons set out above, the Court GRANTS Defendant's motion for judgment on the administrative record. The Clerk of the Court is directed to enter judgment in favor of Defendant and to dismiss the complaint with prejudice.