BIOFUNCTION, LLC, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 07–67C.

United States Court of Federal Claims.

March 26, 2010.

Barbara Jean Massey, Law Offices of David W. Ginn, Walnut Creek, CA, for Bio-Function, LLC.

Robert C. Bigler, U.S. Dept. of Justice—Civ. Div., Washington, DC, for U.S.

### OPINION AND ORDER

HODGES, Judge.

Plaintiff entered into a written contract with the United States Postal Service in May 2003 for consulting services. BioFunction agreed to operate a pilot program in addition to its work under the express contract, at no cost to the Government, in exchange for an endorsement letter if the Postal Service liked the program.[1] The side agreement was an

---

1. An operational endorsement letter would allow BioFunction to market its products to the Postal Service in the Pacific Area.

oral one, made between plaintiff and a Post Office employee who did not have authority to bind the Government.

The contract expired in December 2004, but plaintiff continued to run the pilot program until the Government extended the original contract in February 2005 for $90,000. Defendant terminated BioFunction's contract for convenience shortly thereafter, and plaintiff filed this suit to recover over $360,000 that it spent on the pilot program.

BioFunction contends that the Government breached the oral side agreement that supported the pilot program. Defendant points out that the pilot program was not executed by an authorized government official, and it did not include monetary compensation as consideration. According to plaintiff, an extension of its written, authorized contract in 2005 ratified the pilot program. Alternatively, the oral agreement constituted an implied-in-fact contract.

Defendant paid the full contract price of $340,800 for the initial term of the written agreement, from May 2003 to December 2003, and $249,900 for an extension of the contract through December 2004. The express contract and the two extensions were signed by contracting officers. Plaintiff sues to recover $364,408.40 that it allegedly spent on the pilot program.

Defendant filed a motion for summary judgment, and moved to dismiss plaintiff's claim for unjust enrichment count for lack of subject matter jurisdiction. We grant defendant's motions for the reasons stated below.

## BACKGROUND

BioFunction advises businesses on means of evaluating the physical capabilities of employees who claim disability and matching them to jobs the employees are capable of performing. The Postal Service hired BioFunction to evaluate their employees using computer software programs called ErgoMatch and ErgoWizard. The parties signed the contract in May 2003, and modified it later to extend the termination date to the end of 2004.

Several months after the parties began work according to the written contract, BioFunction's managing member, Mr. Kovacic, approached a district manager for the Postal Service, Ms. Fernandez, about providing additional services to the Government through a separate, no-cost agreement. In return, plaintiff wanted an endorsement letter recommending the pilot program to other Postal Service offices. Mr. Kovacic and Ms. Fernandez agreed that BioFunction would provide the additional services as a pilot program, and that the Postal Service would endorse the program if it were considered successful according to various criteria. For example, Ms. Hernandez' recommendation of BioFunction's pilot program was contingent upon its demonstrated cost savings. The pilot program services were similar to those covered by the written contract, but were more "hands-on"; the written contract consisted mostly of data analysis services.

The pilot program remained active for a time after BioFunction's written contract extension expired by its terms at the end of 2004. Defendant continued to accept services from plaintiff during January 2005, then in early February, it extended the expired contract to April 2005. The modification extending the written contract purported to cover the period during January and February 2005 when no authorized contract had been in force.[2] The Government terminated that contract for convenience only a few days later.

## DISCUSSION

The express contract expired by its terms on December 31, 2004, but BioFunction remained on site and performed services under the pilot program. The Government issued a modification of the express contract over a month later, in February 2005, but the modification purported to cover the entire period May 2003 to April 2005. Thus, the extension

---

**2.** The express contract had expired on December 31, 2004. The contracting officer signed the modification extending the express contract on February 8, 2005. The modification had a retro-active effect because it showed the term of contract performance to be May 2003 through April 2005.

to April 2005 appeared to have a retroactive effect, picking up the "gap" between the end of December 2004, and February 8, 2005. We could not credit plaintiff's claim for services provided under the pilot program, but the unusual series of events raised the possibility that BioFunction could be entitled to payments for services that defendant accepted during the "gap period" between January 1, 2005 and February 8, 2005, if they were covered by the express, written contract.

We sought a supplemental declaration itemizing services that BioFunction provided pursuant to the express contract during the gap period. Plaintiff re-submitted invoices representing services allegedly provided between October 2004, when the pilot program began, and mid-February 2005, when defendant terminated the authorized contract for convenience.

Plaintiff now insists that all services under the pilot program are recoverable under the express contract because that contract provided for parties to exercise "optional services." Defendant's termination of its contract resulted in nearly $365,000 of expenses out-of-pocket, it alleges. According to the Postal Service, BioFunction is not entitled to damages under the express contract because the Government paid the full contract price for services rendered. The Postal Service paid the full contract price of $340,800 for its original term, and $249,900 for the first extension in January 2004. Invoices that are the basis for this lawsuit represent services that were not included in the express contract.

Plaintiff contends that the pilot program was enforceable as an implied-in-fact contract. Alternatively, the Government ratified the pilot program agreed to by Ms. Hernandez and Mr. Kovacic when the Postal Service extended plaintiff's authorized, written contract. That is, the extension ratified the contract to include payments for the additional services provided through the pilot program. However, the extension authorized only $90,000 for future services, far less than the amount the plaintiff seeks in this suit.[3] Nei-

ther party took steps pursuant to the contract to memorialize the alleged ratification.

Plaintiff relies in part on the following provision of the contract: "Supplier will be paid a percentage of the work performed prior to the notice of termination plus reasonable charges the supplier can demonstrate to the satisfaction of the Postal Service using its standard record keeping system have resulted from the termination." This was a firm, fixed-price contract. When any changes to the contract were to be made, plaintiff was to give the contracting officer "written notice stating (a) the date, circumstances, and source of the order and (b) that the supplier regard[s] the order as a change order."

### A. Duties of Good Faith, Fair Dealing, and Cooperation

Plaintiff claims that Postal Service violated its duties of good faith, fair dealing, and cooperation by terminating the contract for convenience and refusing to compensate BioFunction for services provided under the pilot project. According to plaintiff, Ms. Fernandez induced BioFunction to perform under the pilot program with no intention of endorsing its program.

 Public officials are presumed to have discharged their duties correctly, lawfully, and in good faith. *See Hoffman v. United States,* 894 F.2d 380, 385 (Fed.Cir. 1990); *Bateson v. United States,* 51 Fed.Cl. 557, 561 (2002). Irrefutable proof of bad faith is necessary to overcome the presumption of good faith. *See T & M Distribs., Inc. v. United States,* 185 F.3d 1279, 1285 (Fed. Cir.1999); *Torncello v. United States,* 231 Ct.Cl. 20, 45, 681 F.2d 756 (1982). The Government acts in good faith even if it has knowledge of particular facts that could lead it to terminate the contract for convenience. *Caldwell & Santmyer, Inc. v. Glickman,* 55 F.3d 1578, 1582 (Fed.Cir.1995). Plaintiff provides no evidence that Ms. Fernandez or any official at the Postal Service acted in bad faith, or knew in advance that the contract would be terminated for convenience.

---

**3.** For example, BioFunction billed over $60,000 for evidentiary examinations, $168,000 for "Er-

goWizard Full Service," and another $115,500 between October 2004 and February 7, 2005.

Plaintiff suggests that defendant violated a provision of the Postal Service manual that prohibits an officer from encouraging a supplier to perform work that should be covered under a contract modification. However, it does not provide evidence of such a violation. If BioFunction could make that showing, "violation of a regulation is not *per se* evidence of bad faith sufficient to overcome the presumption of good faith." *Aloisi v. United States*, 85 Fed.Cl. 84, 97 (2008). No allegations of record are sufficient to raise material issues of fact necessary to overcome defendant's motion for summary judgment.

## B. Contract Formation

Plaintiff must satisfy all four elements of an enforceable government contract. These are (1) mutuality of intent to contract, (2) consideration, (3) lack of ambiguity in offer and acceptance, and (4) authority on the part of the government agent entering the contract to bind the Government. *Suess v. United States*, 535 F.3d 1348, 1359 (Fed.Cir.2008). These elements apply to implied-in-fact contracts as well as express contracts. *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed.Cir.2001).

## C. Actual Authority

The government representative whose conduct is relied upon must have possessed actual authority to bind the Government to the contract. *City of El Centro v. United States*, 922 F.2d 816, 820 (Fed.Cir. 1990). BioFunction has the burden of establishing that Ms. Fernandez had the requisite actual contracting authority to agree to the terms of the pilot program. *City of El Centro*, 922 F.2d at 820–21 (holding that the party asserting the existence of a contract with the United States bears the burden of establishing that the person upon whose alleged promises the party relied had the requisite actual contracting authority). To survive defendant's motion for summary judgment, BioFunction must provide evidence that the government official with whom it dealt had actual authority to bind the Postal Service. *H. Landau & Co. v. United States*, 886 F.2d 322, 324 (Fed.Cir.

1989); *Roy v. United States*, 38 Fed.Cl. 184, 187, *appeal dismissed*, 124 F.3d 224, 1997 WL 437435 (Fed.Cir.1997).

Plaintiff had information from the Postal Service that named all contracting officers during the period applicable to this claim. BioFunction had ample opportunity to contact an authorized officer, but insists instead that Ms. Fernandez had actual authority. Ms. Fernandez' delegated contracting authority was limited to $10,000 for purchasing supplies and services. Plaintiff argues that because she had *some* contracting authority, she could obligate the Postal Service to pay BioFunction over $360,000 for its pilot program. No genuine issue of material fact exists on the question of actual authority.

## D. Implied Actual Authority

BioFunction argues that Ms. Fernandez had implied actual authority to bind the Postal Service because she could order supplies. Authority cannot be implied in one official when a contract expressly assigns a duty to another. *See Winter v. Cath-dr/Balti*, 497 F.3d 1339, 1349 (Fed.Cir.2007) (holding that where "the contract explicitly reserved authority to modify the contract to the Contracting Officer, the ROICC did not have actual or implied authority to direct the contractor to perform compensable contract changes.").

This court has ruled that implied actual authority may exist only where contracting authority is an integral part of the duties assigned to the government employee. *SGS–92–X003 v. United States*, 74 Fed.Cl. 637, 652 (2007). Contracting authority is "integral" when an employee cannot perform its duties without it, and the authority is an essential or necessary part of the employee's occupation. *Id.* Implied actual authority cannot exist where an agency's regulations grant contracting authority to other agency employees. *Id.*

BioFunction shows that Ms. Fernandez had authority to purchase supplies through an online system known as E–Buy, but it does not allege that the Postal Ser-

vice used E–Buy for this contract.[4] Plaintiff also argues that Ms. Fernandez' title—District Manager—necessarily implies contracting authority. Indeed, Ms. Fernandez had a wide range of authority as manager of approximately 425 Post Offices and their employees. However, BioFunction must establish that contracting authority was a *necessary* part of her duties. Plaintiff cannot show that Ms. Fernandez could not have performed her duties without such authority.

The May 2003 contract and its extensions named officers who could modify the contract. The contract required BioFunction to notify the contracting officer of any modifications and receive written approval. It had to bill the Postal Service within thirty days of receiving a written approval for such modifications. If the oral agreement with Ms. Fernandez modified the parties' written contract, plaintiff did not take any of these steps described by the contract.

### E. Implied–in–Fact Contract

This court has jurisdiction to hear cases based upon contracts implied-in-fact. 28 U.S.C. § 1491(a)(1)(2006); *Gould, Inc. v. United States*, 67 F.3d 925 (Fed.Cir.1995). However, implied-in-fact contracts require the same elements as those required for express contracts. *Sommers Oil Co. v. United States*, 241 F.3d at 1378. These are (1) mutuality of intent to contract, (2) consideration, (3) lack of ambiguity in offer and acceptance, and (4) authority to bind the Government. *Suess v. United States*, 535 F.3d at 1359.

 Ms. Fernandez did not possess sufficient authority to bind the United States in contract. As discussed earlier, "the existence of an express contract precludes the existence of an implied contract dealing with the same subject, unless the implied contract is entirely unrelated to the express contract." *Atlas Corp. v. United States*, 895 F.2d 745, 754–55 (Fed.Cir.1990) (citing *ITT Federal Support Servs., Inc. v. United States*, 209 Ct.Cl. 157, 531 F.2d 522, 528 n. 12 (1976)). It is true that the pilot program and the express contract shared several services involving the ErgoWizard software, but among the differences distinguishing them were the extent of the services provided and who would bear the costs.[5]

### F. Ratification

 Plaintiff argues that the Postal Service ratified the oral agreement in February 2005, when the contracting officer executed the contract extension. A ratifying government official must have the authority to bind the Government in contract, and "have knowingly confirmed, adopted, or acquiesced to the unauthorized action of her subordinate." *Leonardo v. United States*, 63 Fed.Cl. 552, 560 (2005). Ratification of a contract with the Government by an authorized individual "can only be based upon full knowledge of all the facts upon which the unauthorized action was taken." *California Sand and Gravel, Inc. v. United States*, 22 Cl.Ct. 19, 28 (1990) (quoting *United States v. Beebe*, 180 U.S. 343, 354, 21 S.Ct. 371, 45 L.Ed. 563 (1901)).

 Plaintiff does not contend that the contracting officer knew of the oral agreement alleged, but that Ms. Fernandez' knowledge was imputed to him, replying on *Blue Cross & Blue Shield United of Wis. & Subsidiaries v. United States*, 71 Fed.Cl. 641, 660 (2006). *Blue Cross* was a tax case in which the knowledge of an IRS employee could be imputed to the employee's supervisor. *Id.* The contracting officer in this case testified in a deposition that he had no inter-

---

4. E–Buy is an electronic Request for Quote/Request for Proposal system designed to allow federal buyers to purchase services and products online through the Government's Multiple Award Schedule.

5. The services for which BioFunction is attempting to collect under an implied-in-fact contract were extensions of the services provided under the express contract. The additional services were intended to expedite the process of placing employees back to work using the same ErgoWizard software. The express contract included data analysis services using the ErgoWizard software. The pilot program entailed more focus on placing disabled workers in jobs they could handle. It offered support services as well, paying employees' costs of transportation for doctors' appointments and therapy, for example. The additional services were called "ErgoWizard Full Service."

action with Ms. Fernandez, and that he did not recall having discussed the contract extension with anyone. BioFunction has not offered evidence or alleged facts to suggest otherwise.

### G. Institutional Ratification

■ Institutional Ratification may occur when the Government seeks and receives benefits from an unauthorized contract. *Janowsky v. United States*, 133 F.3d 888, 891–92 (Fed.Cir.1998). It requires the involvement of government officials who have contracting authority and whose actions demonstrate "clear acceptance of an unauthorized agreement." *Digicon Corp. v. United States*, 56 Fed.Cl. 425, 426 (2003); *Strickland v. United States*, 382 F.Supp.2d 1334, 1348 (M.D.Fl.2005).

Plaintiff argues that institutional ratification may occur without ratification by an authorized official, relying on *Silverman v. United States*, 230 Ct.Cl. 701, 679 F.2d 865 (1982). In *Silverman*, a government official promised a court reporting service that it would pay for hearing transcripts. *Id.* at 705, 679 F.2d 865. Relying on this promise, the reporting service sent the transcripts to the Government, which retained and used them. *Id.* The government official did not have contracting authority, but did have authority to approve vouchers for goods and services. *Id.* The court held that the Government ratified the official's actions "by accepting the benefits flowing from the senior FTC official's promise of payment...." *Id.* at 709, 679 F.2d 865.

■ In *City of El Centro,* a hospital argued that the United States Border Patrol breached a contract implied-in-fact to compensate it for treatment of illegal aliens who sustained injuries while fleeing Border Patrol agents. 922 F.2d at 817. The Federal Circuit rejected the hospital's institutional ratification argument and distinguished *Silverman* by explaining that the official in *Silverman* had authority to approve vouchers for goods and services, and the Government received a benefit from the transcripts; in *City of El Centro*, no official with contracting authority promised payment to the hospital, and the Border Patrol did not receive the

benefits. *Id.* at 821–23. Ms. Fernandez did not have the authority to bind the Government in contract for either the type or the amount of the contract disputed in this suit.

This court found institutional ratification in *Digicon*, where the Air Force demonstrated acceptance of an unauthorized agreement by executing an express written agreement, explicitly and repeatedly recognizing the existence of the agreement and benefitting under the unauthorized agreement for sixteen months. 56 Fed.Cl. at 426. After making over sixteen million dollars in payments under the unauthorized agreement, the Air Force attempted to exit the express written agreement under the terms of the unauthorized agreement. *Id. Digicon* involved an individual with unlimited contracting authority who was directly involved with the implementation and oversight of the unauthorized agreement. *Id.*

Similar circumstances do not exist in this case. BioFunction does not name one employee with adequate contracting authority who was involved in the implementation or oversight of the pilot program. BioFunction merely argues that some Postal Service personnel knew of the pilot project and that the Postal Service received some benefit from the program.

### H. Unjust Enrichment

■ Plaintiff seeks equitable relief based on a theory of unjust enrichment, relying solely on decisions that award relief on the basis of *quantum meruit.* The Tucker Act does not grant this court jurisdiction to adjudicate equitable claims of unjust enrichment. *Aetna Cas. and Surety Co. v. United States*, 228 Ct.Cl. 146, 655 F.2d 1047 (1981). *Quantum meruit* recovery is appropriate where the parties formed a relationship that is contractual in nature, even though an enforceable contract may never have been created. *Transfair Int'l, Inc. v. United States*, 54 Fed.Cl. 78, 87 (2002). The Court of Claims held that recovery in *quantum meruit* is based upon a contract implied in law. *See, e.g. Fincke v. United States*, 230 Ct.Cl. 233, 675 F.2d 289, 296 (1982). This court has no jurisdiction over claims based on contracts

implied-in law. Plaintiff's cause of action for unjust enrichment fails.

### Other Considerations

We had concerns about the Government's decision to terminate plaintiff's contract for convenience only days after having extended it to retroactive effect. The Government argued that the modification executed in February 2005 was not retroactive, but the February extension incorporated the entire period May 2003 through April 2005. We raised the possibility that BioFunction may be entitled to payments for services covered by the express contract during the "gap period" from January 1, 2005 to February 8, 2005, and sought a supplemental declaration from BioFunction itemizing the services covered under the express contract during the gap period. Instead, plaintiff submitted invoices identical to those submitted with the Complaint, covering services from October 2004 to February 2010.

In addition to presenting the legal theories discussed above, plaintiff now insists that all services under the pilot program are recoverable under the express contract because the contract included authority for the parties to exercise "optional services." Such services, if they exist, would be subject to the same requirements of authority and mutual agreement described in this Opinion.

Plaintiff has not provided evidence of bad faith termination for convenience, or even argued its case in such terms. We have no reason to consider that issue in this case other than the unusual fact pattern presented. An effort to consider the possibility that plaintiff performed services under the express contract during the gap period was unsuccessful because plaintiff could not or would not provide evidence that it performed such services.

### CONCLUSION

A government contract may be implied, but it binds the Government only if it carries proper consideration and is authorized. The pilot program was not approved by an authorized government official. BioFunction did not seek monetary compensation for services under the pilot program, but only an endorsement of its services if they met certain criteria. BioFunction has not provided evidence that a government official promised it monetary compensation for the pilot. If plaintiff had such evidence, it would have to show that the official was authorized to bind the Government, or that it was ratified by a government official with the authority to bind the Postal Service. The record does not raise genuine factual issues that would warrant trial.

Defendant's motion for summary judgment is GRANTED. The Clerk of Court will dismiss plaintiff's Complaint. No costs.